# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-99-00673-CR

**Noah Daniel Montemayor, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HARRIS COUNTY, 185TH JUDICIAL DISTRICT
### NO. 711,212, HONORABLE ROBERT N. BURDETTE, JUDGE PRESIDING

A jury found Noah Daniel Montemayor guilty of murdering more than one person in the same criminal transaction and convicted him of capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(7)(A) (West 1994). The jury found that there were sufficient mitigating circumstances to warrant punishment of life imprisonment rather than death. *See* Tex. Code Crim. Proc. Ann. art. 37.071, § 2(e)(i) (West Supp. 2001). The trial court sentenced appellant to life imprisonment. *See id.* § 2(g). On appeal, appellant asserts that the evidence is insufficient to support the jury's verdict, and that the trial court erred in admitting unlawfully obtained evidence, in receiving a coerced verdict, and in removing appointed trial counsel. We will affirm the judgment.

The grand jury charged that appellant did "unlawfully during the same criminal transaction, intentionally and knowingly cause the death of Edimburgo Martinez by shooting Edimburgo Martinez with a firearm, and intentionally and knowingly cause the death of Jose Vitela by shooting Jose Vitela with a firearm."

## Sufficiency of the Evidence

The fifth issue appellant presents is "[w]hether the evidence presented was legally and factually insufficient to support the jury's verdict."[1] Appellant summarized his argument as follows:

> The evidence was legally and factually insufficient to support the jury's verdict. The established record fails to show that the State proved that the Appellant killed two persons, in light of the Appellant's showing of self-defense against one of the victims. The State's case is full of holes and material evidence is missing so that the jury should not have found the Appellant guilty of capital murder beyond a reasonable doubt.

Appellant concedes that he is guilty of murdering Vitela. However, he argues that there was substantial evidence that he shot Edimburgo Martinez in self-defense and was therefore not guilty of capital murder as charged.

In reviewing the legal sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); *Geesa v. State*, 820 S.W.2d 154, 167 (Tex. Crim. App. 1991).

The standard of review to use in resolving the specific issue argued by appellant was stated in *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991), as follows:

---

[1] In his fifth point of error, appellant has combined and argued together both legal and factual sufficiency of the evidence. We have warned against this practice. *See Martinets v. State*, 884 S.W.2d 185, 188-89 (Tex. App.—Austin 1994, no pet.). Nevertheless, we will review both legal and factual sufficiency of the evidence.

2

> In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.

*Id.* at 914.

Defensive evidence that is consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient because the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence. *Id*. A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Id*.; *Jenkins v. State*, 740 S.W.2d 435, 438 (Tex. Crim. App. 1983).

We will review the evidence to determine its sufficiency as it relates to appellant's complaint. Edwardo Martinez and appellant were the only eyewitnesses to testify about the shooting of Vitela and Edimburgo Martinez. Edwardo Martinez and Edimburgo Martinez were not related. Vitela and Edimburgo Martinez, known as "Fausto," were shot by appellant during an aborted drug transaction. In the same criminal transaction, appellant shot and seriously wounded Edwardo Martinez, known as Eddie, another participant in the aborted drug deal. Outside the apartment where appellant shot the victims, appellant, as he was escaping, shot and severely wounded Houston Police Officer Juan Ybarbo. Ybarbo, who lived in the complex, was returning to his apartment; he was not on duty and was not wearing his uniform.

We will summarize Eddie's testimony. Eddie had been granted immunity from prosecution. He testified that he had brokered between five and eight drug deals between appellant

3

and Fausto, each for 250 grams of cocaine. On December 21, 1995, Eddie was supposed to arrange for a deal between appellant and Fausto; according to Eddie, appellant wanted to purchase two kilograms of cocaine. Appellant came to Eddie's house about noon, but Eddie had not arranged the deal because he did not want to broker such a large deal in his house. Appellant became angry with Eddie. Eddie then arranged for the deal to take place later that evening in Fausto's apartment in a different part of Houston. Eddie claimed he did not want to participate in such a large deal; therefore, he would not accept his usual commission. Appellant, who did not know where Fausto lived, offered Eddie $500 to drive him to Fausto's apartment. Eddie intended to give the $500 to his friend Vitela whose car they used. According to Eddie, he was going to take appellant to Fausto's apartment and drop him off; appellant was going to call a taxi when he was ready to leave. Eddie, driving Vitela's car and accompanied by Vitela, took appellant to the apartment complex where Fausto lived. When they arrived, Vitela needed to use the restroom, so all three men entered Fausto's apartment. Vitela, who had recently suffered a stroke and was in poor health, went to the restroom. Appellant and Fausto went into the kitchen where appellant inspected the cocaine exhibited by Fausto. Fausto asked appellant for the purchase money, some $30,000. Appellant asked to use the restroom before he showed Fausto the money. Eddie and Vitela were preparing to leave the apartment when Eddie heard Fausto say in Spanish, "Oh, my God what is this?" Eddie looked up and saw appellant pointing a gun right at him; appellant aimed the gun and fired it at Eddie. The projectile entered Eddie's jaw and exited behind his ear. Eddie heard three more shots, and felt Fausto fall over him. Eddie "played dead"; he felt appellant remove the car keys from his pocket. When Eddie heard the appellant leave the apartment, he got up to dial 911. Eddie heard appellant tell someone outside the apartment that

4

somebody had shot his friend. Then Eddie heard a number of rapidly fired shots just outside the apartment door. Eddie saw Vitela, who had been shot in the head, laying face up on the floor. Fausto and Vitela died as a result of their gunshot wounds.                In his brief, appellant summarized his trial testimony. Appellant was 22 years old on December 21, 1995. He met Eddie when he was about 18 after he dropped out of high school. Eddie had appellant deliver drugs to a specified location and then paid appellant. Appellant continued working for Eddie until he was charged and convicted for assault. Appellant received deferred adjudication probation and went to boot camp for ninety days.

After appellant successfully completed boot camp, he told Eddie that he wanted out of the drug-dealing business. Soon after, appellant was shot. Later, appellant learned that Eddie did the shooting. After the shooting, Eddie "advised" appellant to go back to work with him and to not cross him because he had "connections."

Appellant was working at Computer City during the period shortly before December 21, 1995. During that period, Eddie made repeated telephone calls to appellant's parents' house. Appellant avoided the calls but eventually spoke with Eddie.

Appellant admitted that he purchased a gun several days before the December 1995 shootings. Appellant spoke with Eddie and they agreed to do another deal; as usual, appellant would deliver a package to a man and the man would in turn give appellant money. On the day of the shooting, Eddie picked up appellant at appellant's house. Eddie showed up with Vitela, who appellant did not then know. Appellant took his pistol and a black backpack. During the drive to

Fausto's apartment, Eddie and Vitela spoke Spanish to each other; appellant did not understand Spanish.

Eddie drove to Fausto's apartment. Appellant had never before been to the apartment. Eddie made a phone call from a nearby pay phone to alert Fausto of their pending arrival. All three men went to the apartment. Once they were inside, Fausto left to go get cocaine. Fausto was gone long enough that appellant went into the restroom. Fausto returned with two kilos of cocaine in a duffle bag. Each kilo was wrapped in white tape. Fausto used a kitchen knife to cut into one of the packages. Fausto and Eddie spoke Spanish as they looked at the package. Eddie and Fausto began talking angrily when Eddie pulled out a chrome revolver. Eddie pointed the weapon at Fausto and told him to give appellant the dope. Appellant said, "This ain't right—I'm not doing this." Appellant then backed up when Eddie began to turn. Appellant took his pistol from his waistband. Eddie then pointed the pistol at appellant. Appellant thought about running but knew that if he turned, he would get shot in the back. Fausto had backed up towards appellant.

Appellant then shot Eddie. Fausto moved towards appellant with a knife in his hand. Appellant responded in self-defense by shooting Fausto. Vitela then grabbed appellant from behind. Appellant reacted by immediately firing his pistol, hitting Vitela in the back of the head.

Appellant grabbed the cocaine, put it in his backpack, took the car keys from the table and ran. When appellant went outside to the balcony, he ran into a man who he later learned was Juan Ybarbo. Appellant testified that Ybarbo did not identify himself as a police officer. Ybarbo shot at appellant. Appellant closed his eyes and returned fire to empty his pistol. When appellant opened his eyes, he saw Ybarbo at the bottom of the stairs. Appellant ran to Vitela's car but he could not

6

get in. Appellant ran and later called his father to pick him up. Appellant went to his room, changed clothes, and called his friend Julio. Julio picked him up that night. Appellant said that he told Julio that there had been a shooting and that Eddie was involved but he did not tell Julio any details. Appellant stayed with Julio at Julio's girlfriend's house that night.

The next day, Julio drove appellant back to appellant's house. Appellant retrieved one of the kilos from his room and put it into the trunk of Julio's Toyota. They then waited for appellant's cousins who arrived in a pickup. The plan was to sell the kilo of cocaine. However, they were stopped and appellant was arrested shortly after they drove off.

During the trip to the police station, Officer Shirley and his partner engaged in a conversation with appellant and appellant answered the officers' questions. Appellant told them that he had been shot during an earlier incident and that he was afraid of Eddie Martinez. Appellant told the officers that he wanted out of the drug business but that Eddie threatened harm to appellant and appellant's family.

Conflicts in the testimony of Eddie and appellant were matters for the jury's resolution. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find proof of the essential elements of the murder of Fausto beyond a reasonable doubt and could also find against appellant on the self-defense issue beyond a reasonable doubt. We conclude the evidence is legally sufficient to support the jury's verdict finding appellant guilty of capital murder.

We now consider whether the evidence is factually sufficient to support the jury's verdict; this includes the evidence supporting the jury's implied rejection of appellant's claim that he

7

acted in self-defense. In performing a factual sufficiency review, the courts of appeals are required to give deference to the jury's verdict and examine all of the evidence impartially, setting aside the jury verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997) (quoting *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)).

> The complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.

*Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Other than appellant's testimony, there is no evidence that any of the other three men in the apartment when the shootings occurred were armed with a firearm. The trial court instructed the jury completely on appellant's right to use appropriate force including deadly force to defend himself against reasonably perceived real or apparent danger. After neutral consideration of all of the evidence, and after giving proper deference to the jury's verdict, including its implied rejection of the self-defense issue, we conclude that the evidence of appellant's guilt is not so weak as to undermine confidence in the jury's determination, or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. The evidence, including the evidence supporting the jury's implied rejection of appellant's self-defense claim, is factually sufficient to support the jury's verdict finding appellant guilty of capital murder. We conclude the evidence is legally and factually sufficient to support the jury's verdict.

8

**Seizure of Evidence**

The first issue appellant presents is "[w]hether the consent to search appellant's room by non-relative was valid?" The State responds that the trial court did not err by denying appellant's motion to suppress evidence of the gun and cocaine found in appellant's room because appellant did not have standing to complain, and because Sandra Montemayor had authority to consent to the search of appellant's room, and that her consent was freely and voluntarily given. Furthermore, the State claims reversible error is not presented because appellant waived any error by testifying that he possessed the gun and the cocaine.

We need not determine whether appellant had standing to complain about the search that resulted in the seizure of the gun and cocaine; neither do we need to determine whether Sandra Montemayor had actual or apparent authority to consent to the search. Although we believe the record shows that the gun and cocaine were lawfully seized, even if we assume that they were not, we hold that the admission of this evidence was rendered harmless by appellant's own testimony.

When a defendant "testifies to possession of evidence which he has challenged as being unlawfully seized, he waives the error." *Jones v. State*, 843 S.W.2d 487, 493 (Tex. Crim. App. 1992); *accord Creel v. State*, 493 S.W.2d 814, 819 (Tex. Crim. App. 1973). Moreover, when "the defendant testified to 'the same facts that were proved by the State, error, if any, in admitting such facts was harmless.'" *Jones*, 843 S.W.2d at 493; *accord Hill v. State*, 504 S.W.2d 484, 488 (Tex. Crim. App. 1974) (overruled on other grounds); *see also Murphy v. State,* 640 S.W.2d 297, 300 (Tex. Crim. App. 1982); *Angelo v. State*, 977 S.W.2d 169, 176 (Tex. App.—Austin 1998, pet. ref'd).

> Our rule, therefore, is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. This rule applies whether the other evidence was introduced by the defendant or the State. *See, e.g., Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993); *Stoker v. State*, 788 S.W.2d 1, 12 (Tex. Crim. App. 1989) . . . . The rule has never been otherwise, so far as we know. In Wagner v. State . . . 109 S.W. 169, 169 (1908), we said, "It is well settled in this state that the erroneous admission of testimony is not cause for reversal, if the same fact is proven by other testimony not objected to. *See . . . West v. State*, 2 Tex. App. 460 (1877) . . . ."

*Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

There are exceptions to the general rule. "One exception is that the defendant's testimony, which constituted other evidence of the fact that was proved over the defendant's objection, was impelled by the State's introduction of evidence that was obtained in violation of the law." *Id*. at 718-19; *accord Sweeten v. State*, 693 S.W.2d 454, 458 (Tex. Crim. App. 1985); *Thomas v. State*, 572 S.W.2d 507, 516 (Tex. Crim. App. 1976). "The other exception . . . is that the harmful effect of improperly admitted evidence is not cured by the fact that the defendant sought to meet, destroy, or explain it by introducing rebuttal evidence." *Leday*, 983 S.W.2d at 719; *accord Thomas*, 572 S.W.2d at 516.

Appellant, in his own defense in direct examination, testified about buying the gun, how he used it in shooting four men, and about leaving it in his room. Appellant also testified about taking possession of the two kilograms of cocaine as he fled after the shootings and taking the cocaine to his room. He later removed one of the packages of cocaine from his room and it was found in the car when he was arrested. Even if the gun and cocaine were unlawfully obtained as appellant alleges, in view of appellant's own testimony, admitting in evidence the gun and cocaine

10

was harmless. Appellant's testimony was not impelled to meet, destroy, or explain his possession of the gun or contraband, and appellant makes no such claim. The record clearly shows that appellant's testimony was to rebut Eddie's version of the shootings and to advance his self-defense claim. Furthermore, when all of the evidence is considered, evidence of the finding of the gun and cocaine in appellant's room did not substantially benefit the prosecution of appellant for capital murder. The issue of whether there was valid consent for the search of appellant's room and the seizure of the gun and cocaine was rendered harmless by appellant's own testimony.

## Jury Deliberations

The second issue appellant presents is "[w]hether the trial court's instruction to the jury to continue deliberations was unduly coercive after the jury foreman declared that they were 'hopelessly deadlocked.'"

> After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge; or the court may in its discretion discharge it where it has been kept together for such time as to render it altogether improbable that it can agree.

Tex. Code Crim. Proc. Ann. art. 36.31 (West 1981). Here, both parties did not consent to the jury's discharge.

"There are no [set] time limits on the amount of time a jury may deliberate." *Guidry v. State*, 9 S.W.3d 133, 155 (Tex. Crim. App. 1999); *accord Green v. State*, 840 S.W.2d 394, 407 (Tex. Crim. App. 1992). The length of time a jury may be held for deliberation in a criminal case rests in the sound discretion of the trial judge, who will not be reversed on appeal absent a showing

11

by appellant that discretion was abused. *Guidry*, 9 S.W.3d at 155; *Green*, 840 S.W.2d at 407; *Montoya v. State*, 810 S.W.2d 160, 166 (Tex. Crim. App. 1989); *Ford v. State*, 14 S.W.3d 382, 394 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

The trial court's exercise of discretion in discharging a jury is measured by the length of time the jury deliberated in light of the nature of the case and the evidence. *Patterson v. State*, 598 S.W.2d 265, 268 (Tex. Crim. App. 1980); *Satterwhite v. State*, 505 S.W.2d 870, 871-72 (Tex. Crim. App. 1974); *Galvan v. State*, 869 S.W.2d 526, 528 (Tex. App.—Corpus Christi 1993, pet. ref'd). The judge trying the case has such discretion because he knows the amount and difficulty of the evidence, both testimonial and documentary, that a jury must weigh. *Galvan*, 869 S.W.2d at 528.

In this case, jury deliberation started at 1:15 p.m. on Thursday, July 8 and continued until 5:32 p.m. On Friday, July 9, the jury resumed its deliberation at 8:45 a.m.; at 11:52 a.m. the court received a note from the jury stating that "[a]t this time, we cannot reach a unanimous decision on the charge." The trial court instructed the jury to continue its deliberation. At 4:33 p.m. that day, the jurors informed the court that they were still unable to come to a unanimous decision. Appellant moved for a mistrial; he argued that to compel further deliberations would be coercive. At 5:16 p.m., the jurors indicated they wanted to cease deliberating for the evening. At that time, the total time of deliberation had been twelve hours and forty-five minutes. On Saturday, July 10, the jury began deliberating at 9:10 a.m.; at 11:02 a.m., the court received a note from the jury stating: "We honestly believe that we are hopelessly deadlocked and that no amount of further deliberation will allow us to come to a unanimous decision." Defense counsel moved for a mistrial based on the jury's inability to reach a verdict. The trial court stated "for the purpose of the record, your motion is granted." The

court then had the jury return to the courtroom. Without discharging the jury,[2] and after a colloquy in open court between the court and the jury foreperson, the court asked: "Are you satisfied that further deliberations will not allow the jury to arrive at a unanimous decision?" The foreperson replied: "At this time, yes, sir." The court ascertained that since morning the jury had been divided by a vote of eleven to one;[3] because the foreperson had qualified his statement that the jury could not reach a unanimous decision "at this time," the court asked the jury to continue to deliberate.

Defense counsel objected on grounds that the court's action was coercive and pointed out that the air conditioning was off and that the jurors and others would be uncomfortably warm. After "roughly 60 to 65 minutes," the jury came back into the courtroom. The court asked if there had been any changes. The foreperson said not yet but he anticipated there would be a change. The court asked the jury to continue deliberating. Defense counsel reurged his motion for a mistrial. It was noted that the air conditioner was now working. At 4:00 p.m., the jury notified the court that it had reached a verdict. Defense counsel renewed the objection that the jury had been coerced to

---

[2] By failing to discharge the jury and by ordering the jury to resume deliberation, the court implicitly withdrew its decision to grant a mistrial. In the circumstances of this case, the trial court retains authority to withdraw its order for a mistrial. *See Rodriguez v. State*, 852 S.W.2d 516, 520 (Tex. Crim. App. 1993).

[3] The trial court addressed the jury:

THE COURT:     Let me ask you this, sir, and I don't want you to tell me for guilty and I don't want for not guilty. I don't want any attribution as to which way it is. But numerically, how do you find your jury to be split, being 6-6, 10-2 11-2, 8-4?

THE FOREMAN: 11-1.

THE COURT:     How long has it been 11-1?

THE FOREMAN: Since this morning.

13

reach a verdict. The jury found appellant guilty of capital murder as charged. The court polled the jury individually; each juror affirmed the verdict. The court noted that the total time the jury deliberated was eighteen hours.

This is a capital felony case in which the State vigorously sought the death penalty and qualified the jury to return such a verdict. The transcription of the testimony of thirty-one witnesses required more than 1800 pages of the record. More than 190 exhibits were admitted in evidence. Jury notes submitted to the court evidenced the jury's interest in and consideration of appellant's theory of self-defense. After testimony commenced and before the jury was charged, the trial had taken nine days. The trial court did not submit an "Allen charge" to the jury. We conclude that the trial court did not abuse its discretion in allowing the jury to deliberate for eighteen hours. We hold there has been a failure to show that the jury's verdict was coerced.

## Removal of Appointed Counsel

The third issue appellant presents is "[w]hether the trial court erred in removing appointed trial counsel over appellant's objection."

> Whenever the court determines that a defendant charged with a felony or a misdemeanor punishable by imprisonment is indigent or that the interests of justice require representation of a defendant in a criminal proceeding, the court shall appoint one or more practicing attorneys to defend him. An attorney appointed under this subsection shall represent the defendant until charges are dismissed, the defendant is acquitted, appeals are exhausted, or the attorney is relieved of his duties by the court or replaced by other counsel.

Tex. Code Crim. Proc. Ann. art. 26.04(a) (West 1989).

Michael B. Charlton was appointed to represent appellant. Before pretrial matters were heard and before trial on the merits, appellant's family employed Richard Haynes to represent appellant. The trial court conducted a hearing and allowed appellant to choose whether he wanted to be represented by Charlton or Haynes. Appellant chose to be represented by Haynes. Although both Haynes and Charlton objected to the trial court requiring appellant to choose counsel for his representation, the court overruled their objections, and relieved Charlton of his obligation to represent appellant. Appellant was represented by Haynes and Donald Rodgers. On appeal, appellant makes no claim that he was not well represented in the trial of his case. The trial court did not err in removing Charlton as counsel for appellant.

**Suppression of Statements**

The fourth issue appellant presents for review is "[w]hether the trial court erred in denying appellant's motion to suppress his oral and written statements." We find no evidence that appellant made a written statement. Appellant made an oral statement that was tape recorded. This audiotape and a written transcript of the tape were admitted in evidence. The tape recording was made and authenticated in the manner required by statute. *See id.* art. 38.22, § 3 (West Supp. 2001). Appellant contends that his statement was tainted and not admissible because it was made after his unlawful, warrantless arrest. Appellant urges that his arrest was without probable cause and that there was no showing that he was about to escape. Before appellant was arrested, the police knew that the two surviving victims shot by appellant had identified appellant as the person who shot them and killed the other two victims. Eddie, after being shot and while in the hospital unable to speak,

15

had identified appellant by writing appellant's name, address, and telephone number on paper. The officers had ample evidence that appellant had fled from the scene of the crime. The next morning, police surveillance near appellant's residence revealed two men acting in a furtive manner. When they left the residence in a car, the officers believed their presence had been discovered and that the men were escaping. The officers stopped the car on a public street and arrested appellant who was the passenger in the car.

The circumstances in this case and appellant's arrest were similar to those in *Busby v. State*, 990 S.W.2d 263 (Tex. Crim. App. 1999). The court there stated:

> The Fourth Amendment requires an arrest warrant only when the arrest occurs in the suspect's home. *Anderson v. State*, 932 S.W.2d 502, 506 (Tex. Crim. App. 1996), . . . (citing *New York v. Harris*, 495 U.S. 14 . . . (1990)). Appellant was not arrested in his home but on a public highway.
>
> As for appellant's statutory challenge, we find that the warrantless arrest was legitimately made under Article 14.04. That article, known as the felony/escape rule, states:
>
>> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without a warrant, pursue and arrest the accused.
>
> Article 14.04. Although we have held that the felony/escape rule is not satisfied merely by proof that a suspect travels from one place to another, we have also stated that "[t]he escape requirement is obviously met where the suspect has previously fled." *Dowthitt v. State*, 931 S.W.2d [244, 259 (Tex. Crim. App. 1996)] (citing *Fearance v. State*, 771 S.W.2d [486, 510 (Tex. Crim. App. 1988)].

*Id*. at 269-70.

16

In this case, the arresting officers had satisfactory evidence that appellant had committed murder, a capital felony. Appellant had fled the scene of the crime and the officers believed he was attempting to escape when he was arrested. In these circumstances, appellant's arrest was lawful. *See* Tex. Code Crim. Proc. Ann. art. 14.04 (West 1977); *Busby*, 990 S.W.2d at 270. Appellant's subsequent statement was not tainted by an unlawful arrest.

Appellant also insists that his taped statement should have been suppressed and not admitted in evidence because prior to making that statement the officers had questioned him without giving him the "post-arrest warnings" required by *Miranda v. Arizona*, 384 U.S. 436 (1966). Appellant was arrested at 1:15 p.m. After his arrest, the arresting officers took appellant before a magistrate to be advised of his constitutional rights. *See* Tex. Code Crim. Proc. Ann. arts. 14.06, 15.17 (West Supp. 2001). At 1:57 p.m., less than forty-five minutes after appellant's arrest, the magistrate had finished advising appellant of his rights. The officers then took appellant directly to the homicide division at the Southeast Houston Command Station. There, the officers advised appellant of his rights. *See id.* art. 38.22 (West 1979 & Supp. 2001). When asked if he wanted to make a statement, appellant responded, "Yes, I want to tell you about it. I want to make it easy on you." The officers started recording appellant's statement at 2:50 p.m., one hour and thirty-five minutes after he was arrested. Appellant contends that questions asked during the taping of his statements were based on unwarned questioning of appellant after his arrest and before he was taken before the magistrate. Evidence admitted at the hearing of the motion to suppress showed appellant may have volunteered some information about which the officers questioned him concerning why he

17

was afraid of Eddie. However, if appellant was merely questioned at this time before receiving *Miranda* warnings, it would not render his subsequent statement inadmissible.

"[A] suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the required *Miranda* warnings." *Oregan v. Elstad*, 470 U.S. 298, 318 (1985).

> The "fruit of the poisonous tree doctrine" . . . does not apply to mere violations of the prophylactic requirements in *Miranda*: while the statement taken in violation of *Miranda* must be suppressed, other evidence subsequently obtained as a result of that statement (i.e. the "fruits" of the statement) need not be suppressed. *Michigan v. Tucker*, 417 U.S. 433, 452 . . . (1974); *Oregon v. Elstad*, 470 U.S. 298, 314 . . . (1985). The rule . . . requires suppressing the fruits of a defendant's statement only when the statement was obtained through actual coercion. *Tucker,* 417 U.S. at 448-449; *Elstad*, 470 U.S. at 314.

*Baker v. State*, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997); *accord Corwin v. State,* 870 S.W.2d 23, 31 (Tex. Crim. App. 1993); *Chambers v. State*, 866 S.W.2d 9, 21 (Tex. Crim. App. 1993); *Griffin v. State*, 765 S.W.2d 422, 428 (Tex. Crim. App. 1989).

Here, there is no contention that statements appellant may have made before being advised by the magistrate were coerced. Moreover, any statements appellant may have made before he was advised of his rights by the magistrate were not offered or admitted in evidence. The trial court did not err in refusing to suppress and in admitting in evidence appellant's tape recorded statement. Appellant's fourth issue does not present error.

18

The judgment is affirmed.

_____

Carl E. F. Dally, Justice

Before Chief Justice Aboussie, Justices Yeakel and Dally*

Affirmed

Filed:   June 29, 2001

Publish

19

\* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).