# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00703-CR

**Ralph Andrew Gutierrez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 52,120, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

In a jury trial, Ralph Andrew Gutierrez was convicted of capital murder by causing the deaths of two individuals in the same criminal episode. Tex. Pen. Code Ann. ' 19.03(a)(7)(A) (West 1994). The State elected not to seek the death penalty; a sentence of life imprisonment was imposed. Appellant brings one point of error, contending that the evidence was factually insufficient to prove that appellant was not acting in self defense. We will affirm the conviction.

## Factual Background

The essence of this case is a fight, two people killed, an appellant claiming self-defense, and an eyewitness whose version of events differs from appellant=s. On March 2, 2001, approximately a dozen people were gathered in a small house in Bell County Apartying,@ which consisted of sitting around talking, drinking alcohol, and consuming illegal drugs. The eventual victims, Miguel Solis and Juan Sias, were at the

house.  At some point during the party, appellant, Solis, Sias, and a person named John Montague went into a bedroom in the house.

According to appellant=s testimony, while they were in the room, cutting cocaine into Alines@ to snort, Solis accused appellant of jumping a friend of Solis=s at a nightclub.  Solis approached appellant with a razor blade in hand and told appellant that Solis had Aput the green light@ on appellant.  Appellant, an admitted gang member himself, said that meant if he went to prison or was seen on the street, he would be killed.  As Solis approached, appellant said he backed up until he ran into the bedroom wall, then fired at Solis, shooting him in the face.  Solis fell on the bed.  Appellant then focused on Sias, who was standing behind Solis and, believing he was part of an Aassassination@ attempt, shot Sias in the top of the head.  Appellant claimed that Sias had a razor blade in hand and was moving toward him.  Appellant then thought Solis was moving off the bed and shot him in the neck area.  Appellant said he did not know what happened to the razor blades, which investigators did not find at the scene.  He admitted that he and others had tampered with the evidence after the shooting.

Montague had been drinking and smoking marihuana before he arrived at the house.  After the four men went into the bedroom, appellant offered Montague a Aline of coke@ which he declined because he was about to leave.  Appellant asked him to wait; Montague described himself as sitting down and looking down.  He suddenly heard a gunshot.  He looked up, saw appellant walk over to Athe other dude@ (Sias),[1] who was busy chopping cocaine into Alines,@ and shoot him; then appellant walked back to

---

[1] Montague had never met either Sias or Solis before and was confused at times about which victim was Solis and which was Sias.

**2**

Athe other dude@ (Solis) and shot him in the back of the head.  Appellant then demanded that Montague help him deal with the bodies.  Montague observed appellant kick one of the men in the genitals and hit the other victim in the face.  Montague never observed either Solis or Sias with a weapon.  He thought Sias was cutting the cocaine with some kind of plastic ID card; he never saw a razor blade nor did appellant ever tell him that either Solis or Sias had a razor blade.

Bradley Ward, a tenant living in the house, said he heard three gunshots, then saw appellant come out of the bedroom, yelling and waving his gun.  Appellant threatened everyone present, telling them that if anyone talked they would Aget it, too.@  Ward said appellant told him that Athis wasn=t the first time this has ever happened.@  Montague and Ward moved the bodies to the trunk of appellant=s Cadillac.  The next day Ward, acting on appellant=s instructions, tried to cover up the scene of the crime by splashing red paint on the floor.  Appellant threatened him again, saying that if Ward did not keep his mouth shut, Athe body count would get higher.@

After the bodies were loaded in the trunk, Montague then drove appellant to the house of a man called ASilent@ (Jessie Flynt) for help in disposing of the bodies.  Appellant told Silent that he had Apretty much offed two people.@  The three of them dumped the bodies in a ditch by a road somewhere south of Harker Heights.  After receiving a tip through Crime-Stoppers concerning an altercation at a party, police eventually contacted Montague on March 21 and took him into custody.  Montague then showed investigators where to find the bodies.

There was testimony from others at the party that appellant was a gang member and usually armed.  Those who helped appellant said they did so because they were afraid of him.

3

Dr. Sheila Spotswood, a Dallas County medical examiner, testified that Sias had an entrance wound near the top of his head on the right side. Solis=s autopsy showed a bullet wound to the left back of the head. The bullet exited at the right side of his head, between Solis=s eye and ear. The medical examiner testified that this gunshot pathway could only have been caused by a shot fired at the back of Solis=s head.[2]

## Discussion

Appellant does not challenge the legal sufficiency of the evidence to support the conviction. Appellant contends that the evidence is factually insufficient to prove that he was not acting in self-defense at the time he shot Solis and Sias. The State does not have to present evidence that refutes appellant=s self-defense testimony; rather, it must prove its case beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *Montemayor v. State*, 55 S.W.3d 78, 82 (Tex. App.CAustin 2001, pet. ref=d). A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Saxton*, 804 S.W.2d at 914; *Jenkins v. State*, 740 S.W.2d 435, 438 (Tex. Crim. App. 1983). The evidence must be sufficient to support the jury=s implied finding against appellant beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Our review of all of the evidence to consider whether the

---

[2] Appellant referred to shooting Solis in the face. Although several witnesses referred to three shots being fired, only two bullets were recovered from the bodies. Some aspects of the autopsy, such as tracing the bullets=pathways, were complicated by the decomposition of the bodies. The investigation of the crime scene was complicated by tampering.

evidence is factually sufficient includes that supporting the jury's implied rejection of appellant's claim of acting in self-defense. *Montemayor*, 55 S.W.3d at 85.

In performing a factual sufficiency review, all of the evidence is considered equally, including testimony of defense witnesses and the existence of alternative hypotheses. *See Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.CAustin 1992, no pet.). A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, shows that the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury=s determination. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Due deference must be given to the fact finder=s determination, particularly those determinations concerning the weight and credibility of the evidence. *Id*. at 9.

In this case, appellant gave his version of the events that transpired in the room in which Solis and Sias were shot. An eyewitness gave a different version. The physical evidence showed that one of the victims was shot in the back of the head as opposed to appellant=s version in which both victims were shot only from the front in either the head or neck. Appellant claimed he was afraid that Solis and Sias were gang members who had plotted to kill him; law enforcement witnesses said that they found no evidence of gang membership by anyone other than appellant. The jury had before it appellant=s attempts to hide the crime and evidence of his threats to others to compel them to remain silent about the shootings. No razor blades or other weapons appellant described were found. The jury is the exclusive judge of the credibility of the witnesses and weight to be given their testimony; it is the jury=s exclusive province to reconcile conflicts in the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000), *cert. denied*,

**5**

532 U.S. 944 (2001). The proof of guilt is not greatly outweighed by contrary proof, nor is the proof of guilt so obviously weak as to undermine confidence in the jury determination that appellant did not act in self-defense. *See Johnson*, 23 S.W.3d at 11.

## Conclusion

The evidence is factually sufficient to support appellant=s conviction. We overrule appellant=s only point of error and affirm the conviction.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: August 30, 2002

Do Not Publish