TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00703-CR






Ralph Andrew Gutierrez, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 52,120, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING 






 

 In a jury trial, Ralph Andrew Gutierrez was convicted of capital murder by causing
the deaths of two individuals in the same criminal episode. Tex. Pen. Code Ann. § 19.03(a)(7)(A)
(West 1994). The State elected not to seek the death penalty; a sentence of life imprisonment was
imposed. Appellant brings one point of error, contending that the evidence was factually insufficient
to prove that appellant was not acting in self defense. We will affirm the conviction.


Factual Background



 The essence of this case is a fight, two people killed, an appellant claiming self-defense, and an eyewitness whose version of events differs from appellant's. On March 2, 2001,
approximately a dozen people were gathered in a small house in Bell County "partying," which
consisted of sitting around talking, drinking alcohol, and consuming illegal drugs. The eventual
victims, Miguel Solis and Juan Sias, were at the house. At some point during the party, appellant,
Solis, Sias, and a person named John Montague went into a bedroom in the house.

 According to appellant's testimony, while they were in the room, cutting cocaine into
"lines" to snort, Solis accused appellant of jumping a friend of Solis's at a nightclub. Solis
approached appellant with a razor blade in hand and told appellant that Solis had "put the green
light" on appellant. Appellant, an admitted gang member himself, said that meant if he went to
prison or was seen on the street, he would be killed. As Solis approached, appellant said he backed
up until he ran into the bedroom wall, then fired at Solis, shooting him in the face. Solis fell on the
bed. Appellant then focused on Sias, who was standing behind Solis and, believing he was part of
an "assassination" attempt, shot Sias in the top of the head. Appellant claimed that Sias had a razor
blade in hand and was moving toward him. Appellant then thought Solis was moving off the bed
and shot him in the neck area. Appellant said he did not know what happened to the razor blades,
which investigators did not find at the scene. He admitted that he and others had tampered with the
evidence after the shooting.

 Montague had been drinking and smoking marihuana before he arrived at the house. 
After the four men went into the bedroom, appellant offered Montague a "line of coke" which he
declined because he was about to leave. Appellant asked him to wait; Montague described himself
as sitting down and looking down. He suddenly heard a gunshot. He looked up, saw appellant walk
over to "the other dude" (Sias), (1) who was busy chopping cocaine into "lines," and shoot him; then
appellant walked back to "the other dude" (Solis) and shot him in the back of the head. Appellant
then demanded that Montague help him deal with the bodies. Montague observed appellant kick one
of the men in the genitals and hit the other victim in the face. Montague never observed either Solis
or Sias with a weapon. He thought Sias was cutting the cocaine with some kind of plastic ID card;
he never saw a razor blade nor did appellant ever tell him that either Solis or Sias had a razor blade.

 Bradley Ward, a tenant living in the house, said he heard three gunshots, then saw
appellant come out of the bedroom, yelling and waving his gun. Appellant threatened everyone
present, telling them that if anyone talked they would "get it, too." Ward said appellant told him that
"this wasn't the first time this has ever happened." Montague and Ward moved the bodies to the
trunk of appellant's Cadillac. The next day Ward, acting on appellant's instructions, tried to cover
up the scene of the crime by splashing red paint on the floor. Appellant threatened him again, saying
that if Ward did not keep his mouth shut, "the body count would get higher."

 After the bodies were loaded in the trunk, Montague then drove appellant to the house
of a man called "Silent" (Jessie Flynt) for help in disposing of the bodies. Appellant told Silent that
he had "pretty much offed two people." The three of them dumped the bodies in a ditch by a road
somewhere south of Harker Heights. After receiving a tip through Crime-Stoppers concerning an
altercation at a party, police eventually contacted Montague on March 21 and took him into custody. 
Montague then showed investigators where to find the bodies.

 There was testimony from others at the party that appellant was a gang member and
usually armed. Those who helped appellant said they did so because they were afraid of him.

 Dr. Sheila Spotswood, a Dallas County medical examiner, testified that Sias had an
entrance wound near the top of his head on the right side. Solis's autopsy showed a bullet wound
to the left back of the head. The bullet exited at the right side of his head, between Solis's eye and
ear. The medical examiner testified that this gunshot pathway could only have been caused by a shot
fired at the back of Solis's head. (2)


Discussion



 Appellant does not challenge the legal sufficiency of the evidence to support the
conviction. Appellant contends that the evidence is factually insufficient to prove that he was not
acting in self-defense at the time he shot Solis and Sias. The State does not have to present evidence
that refutes appellant's self-defense testimony; rather, it must prove its case beyond a reasonable
doubt. Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); Montemayor v. State, 55
S.W.3d 78, 82 (Tex. App.--Austin 2001, pet. ref'd). A jury verdict of guilty is an implicit finding
rejecting the defendant's self-defense theory. Saxton, 804 S.W.2d at 914; Jenkins v. State, 740
S.W.2d 435, 438 (Tex. Crim. App. 1983). The evidence must be sufficient to support the jury's
implied finding against appellant beyond a reasonable doubt. See Saxton, 804 S.W.2d at 914. Our
review of all of the evidence to consider whether the evidence is factually sufficient includes that
supporting the jury's implied rejection of appellant's claim of acting in self-defense. Montemayor,
55 S.W.3d at 85.

 In performing a factual sufficiency review, all of the evidence is considered equally,
including testimony of defense witnesses and the existence of alternative hypotheses. See Orona v.
State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). A factual sufficiency review asks
whether a neutral review of all the evidence, both for and against the finding of guilt, shows that the
proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine
confidence in the jury's determination. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
Due deference must be given to the fact finder's determination, particularly those determinations
concerning the weight and credibility of the evidence. Id. at 9.

 In this case, appellant gave his version of the events that transpired in the room in
which Solis and Sias were shot. An eyewitness gave a different version. The physical evidence 
showed that one of the victims was shot in the back of the head as opposed to appellant's version
in which both victims were shot only from the front in either the head or neck. Appellant claimed
he was afraid that Solis and Sias were gang members who had plotted to kill him; law enforcement
witnesses said that they found no evidence of gang membership by anyone other than appellant. The
jury had before it appellant's attempts to hide the crime and evidence of his threats to others to
compel them to remain silent about the shootings. No razor blades or other weapons appellant
described were found. The jury is the exclusive judge of the credibility of the witnesses and weight
to be given their testimony; it is the jury's exclusive province to reconcile conflicts in the evidence. 
Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 (2001). 
The proof of guilt is not greatly outweighed by contrary proof, nor is the proof of guilt so obviously
weak as to undermine confidence in the jury determination that appellant did not act in self-defense. 
See Johnson, 23 S.W.3d at 11.


Conclusion



 The evidence is factually sufficient to support appellant's conviction. We overrule
appellant's only point of error and affirm the conviction.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: August 30, 2002

Do Not Publish

1. Montague had never met either Sias or Solis before and was confused at times about which
victim was Solis and which was Sias.
2. Appellant referred to shooting Solis in the face. Although several witnesses referred to three
shots being fired, only two bullets were recovered from the bodies. Some aspects of the autopsy,
such as tracing the bullets' pathways, were complicated by the decomposition of the bodies. The
investigation of the crime scene was complicated by tampering.