# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00228-CR

**Solomon Robledo Salazar III, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
### NO. 08-1397-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State charged Solomon Salazar with assault of a public servant after he allegedly kicked a police officer while the officer was attempting to restrain his legs. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1) (West Supp. 2009). The jury found Salazar guilty and assessed punishment at 10 years' confinement. Salazar appeals, arguing in three points of error that (1) the trial court abused its discretion in admitting a video recording depicting uncharged misconduct, (2) admission of the video violated Salazar's constitutional rights, and (3) the trial court abused its discretion in admitting evidence of a prior conviction. Finding no reversible error, we affirm the conviction.

## BACKGROUND

Shawn Johnson, an officer with the Round Rock Police Department, testified that during patrol duty on the evening of September 19, 2008, he received a report that a man was either

stumbling or had fallen near traffic on the 700 block of McNeil Road in Round Rock, Williamson County.[1] Arriving at the scene shortly after 10:00 p.m., Johnson observed defendant Salazar leaning up against a speed-limit street sign. Upon approaching Salazar, Johnson smelled a strong odor of alcohol and observed that Salazar's eyes were bloodshot and glassy. Johnson testified that Salazar was unresponsive when Johnson asked him his name and whether he had consumed alcohol that evening. Johnson attempted to perform the horizontal gaze nystagmus test,[2] but Salazar did not cooperate, instead simply looking straight ahead and refusing to perform the test. Johnson noticed that Salazar had partial paralysis on one side of his body[3] and concluded it would be unsafe to administer the one-leg-stand test, as Salazar could have fallen into the highway during administration of the test. Johnson asked Salazar whether there was someone who could come to pick him up, to which Salazar responded, "Just take me to jail." Johnson did so, explaining that he concluded that Salazar was a danger to himself due to his apparently intoxicated state and his position between the highway and a railroad track.[4] Johnson handcuffed Salazar, escorted him to the back seat of the

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

[2] The horizontal gaze nystagmus test is a field sobriety test that examines a suspect's eyes for equal tracking and pupil size.

[3] Salazar's sister, Linda Maria Salazar, testified that Salazar became partially paralyzed on his left side after a childhood incident involving Salazar's ingestion of spear grass.

[4] A patrol car video of the stop, admitted at trial, shows Salazar leaning against a traffic sign by the side of the road. After Johnson begins speaking with him, several other patrol cars and an ambulance also arrive on the scene. By the time Johnson begins the horizontal-gaze nystagmus test, there are a total of four uniformed police officers standing around Salazar. The video, which runs roughly seven-and-a-half minutes, ends after Salazar is placed in the back seat of the patrol car and Johnson begins to drive off. The recording does not include audio of the interaction between Johnson and Salazar. According to Johnson, when the car video is on, the "body mike" he wears must be manually turned off (or malfunctioning) for it not to record audio. Johnson testified that he did not know why the body mike was not activated during the stop.

2

patrol car, and took him to the Round Rock Police Department to complete a complaint affidavit so that Salazar could be booked into the Williamson County jail on the charge of public intoxication.

Upon arriving at the police department, Johnson parked his patrol car in the sally port and went inside to fill out the required paperwork, asking sergeant Shawn Normand to supervise Salazar. Normand testified that Salazar was lying down on his back in the rear seat of the patrol car. Salazar then began kicking the window of the rear door of the car. Normand opened the door, at which point Salazar stopped kicking. Normand told Salazar to stop kicking the window. According to Normand, "[Salazar] told me, 'Fuck you,' and then started to kick at me, and that's when I closed the door." Normand then opened the door again to attempt to place leg restraints on Salazar, at which point Johnson and two other officers, officer Tony Rojas and sergeant Mike Osborne, came over to assist. As Normand attempted to place the leg restraints on Salazar, Salazar kicked him in the face and on the wrist, while screaming obscenities at the officers. Normand testified that he felt pain when Salazar kicked him on the face and on the wrist. Johnson testified, "I could see something had happened to Sergeant Normand. You know, as the kicking was going on, you could see him, kind of the motion of a body, get knocked back." Normand testified that the sally port where the patrol car was parked was well lit and that he was wearing his uniform with a shiny badge, and that Salazar was looking directly at him when he kicked him.[5]

Eventually, the officers were able to restrain Salazar's legs. Johnson testified that, after Salazar was restrained, he could see redness on the side of Normand's face and on one of his

---

[5] The incidents that occurred while the patrol car was parked in the sally port at the Round Rock Police Department were not videotaped. Normand testified that it was not standard procedure to have the car camera on while the vehicle was parked at the department and that there were no other functioning cameras in the area at the time.

wrists.[6] Johnson arrested Salazar for assault of a public servant and transported him to the Williamson County jail. Consistent with the protocol for dealing with a "combative prisoner," the jail arranged for Salazar's arrival to be recorded with a hand-held camera.

At trial, the State offered the video recording of Salazar's arrival at the Williamson County jail into evidence. Over objection by defense counsel, the trial court admitted the video. The video shows officers taking Salazar out of the patrol car into an entrance to the jail. Salazar, who is still handcuffed, is put face-first against a wall inside the jail doors as his pockets are searched and his belt and shoes are removed by two officers. After Salazar begins to slide down the wall, the officers seat him on a bench, where he slumps over and appears to lose consciousness. An emergency medical technician (EMT) arrives, and after telling Salazar to "wake up" and getting no response, the EMT performs a sternum rub several times on Salazar.[7] Salazar eventually responds, saying, "Get off my shit, bitch." The two officers then transport Salazar down the hall to a cell. In the cell, the officers place Salazar face-down on his bed, with his legs hanging off the side. After the officers remove Salazar's pants and are attempting to remove his shirt in order to dress him in prison garb, Salazar begins to struggle, possibly attempting to bite one of the officers. After a third officer arrives to aid in subduing Salazar, the officers leave Salazar in his cell in his underwear, and the video, which runs just over ten minutes, ends. The video was shown to the jury at trial.

---

[6] After the incident, Osborne took photographs of Normand's injuries, which were shown to the jury. Normand did not require any medical attention for his injuries.

[7] Kimberly Martin, the EMT who attended to Salazar, testified at trial that a sternum rub, a painful stimulus which involves pressuring the subject's sternum, is a technique used to gauge the subject's level of consciousness and responsiveness.

4

Later in the trial, on rebuttal and over objection by defense counsel, the trial court admitted the testimony of Jason Jones, a detective with the Georgetown Police Department. Jones testified that he arrested Salazar for assault on September 6, 2003. Jones testified that, on that date, he received a call about a potentially intoxicated person walking on the shoulder of Interstate Highway 35. When Jones arrived on the scene and tried to guide Salazar off of the roadway and onto the median, Salazar pushed him. After Jones forced Salazar to the ground, Salazar punched Jones in the face. Several motorists, including two off-duty police officers, stopped to help Jones subdue Salazar, after which Salazar was arrested.

At the conclusion of the guilt/innocence phase of the trial, the jury found Salazar guilty of assault of a public servant. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1). During the sentencing phase of the trial, the State presented evidence that Salazar had previously been convicted of a felony, as alleged in the penalty paragraph of the indictment. The jury found the penalty paragraph to be true, resulting in a punishment range of two-to-twenty years' imprisonment. *See id.* § 12.42 (West Supp. 2009) (penalties for repeat and habitual felony offenders). The jury then assessed punishment at ten years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling concerning the admissibility of evidence of other crimes, wrongs, or acts under an abuse-of-discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 387, 391 (Tex. Crim. App. 1991). Likewise, the trial court's determination of whether notice of intent to introduce evidence of other crimes, wrongs, or acts is reasonable is reviewed under an abuse-of-discretion standard. *See Hayden v. State*, 66 S.W.3d 269, 271 (Tex. Crim. App. 2001). We will not reverse a trial court's decision admitting evidence unless the decision is outside

the "zone of reasonable disagreement." *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

## DISCUSSION

*Admissibility of Video Recording*

In his first point of error, Salazar argues that the trial court erred in admitting the video recording of Salazar's arrival at the Williamson County jail. The video showed Salazar in an apparently intoxicated state and included a sequence during which he struggled with police officers as they attempted to change him into prison garb.

While evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b); *Berry v. State*, 233 S.W.3d 847, 858 (Tex. Crim. App. 2007). This list is illustrative, not exhaustive. *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004). In addition, evidence admissible under rule 404(b) may nonetheless be excluded if the trial judge determines that its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Mozon v. State*, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999).

In this case, the trial court's decision to admit the video falls within the zone of reasonable disagreement. The jury charge contains a limiting instruction stating that evidence of another crime, wrong, or act introduced by the State could be considered for "the purpose for which it was introduced, namely, to show intent or the absence of mistake or accident, and for no other purpose." The video, which shows Salazar struggling with the police as they attempt to change his

6

clothes, is probative on the issue of whether Salazar intentionally kicked Normand while in the back seat of the patrol car or whether he did so by accident. *See* Tex. R. Evid. 404(b); *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (holding that "if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed"). Further, the actions depicted on the video do not warrant the conclusion that the probative value of the video was substantially outweighed by its prejudicial effect. *See* Tex. R. Evid. 403. Accordingly, the trial court did not abuse its discretion in admitting the video into evidence on substantive grounds.[8]

Rule 404(b) also requires the State to provide reasonable notice, upon the defendant's timely request, of its intent to introduce evidence of other crimes, wrongs, or acts in advance of trial. Tex. R. Evid. 404(b).[9] Whether notice is reasonable depends upon the facts and circumstances of each individual case. *Owens v. State*, 119 S.W.3d 439, 443-44 (Tex. App.—Tyler 2003, no pet.).

This Court has held that even short notice may be reasonable when the State immediately informs defense counsel of 404(b) evidence upon its discovery. *See Patton v. State*, 25 S.W.3d 387, 391-92 (Tex. App.—Austin 2000, pet. ref'd) (upholding trial court's ruling

---

[8] We further note that some of the prior acts depicted in the video were discussed without objection during the testimony of Johnson and Normand. As a general rule, "overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Montemayor v. State*, 55 S.W.3d 78, 86 (Tex. App.—Austin 2001, no pet.).

[9] An exception to the notice requirement occurs when the evidence arises from the same transaction. *McDonald v. State*, 179 S.W.3d 571, 577 (Tex. Crim. App. 2005). Under Rule 404(b), however, same transaction contextual evidence is admissible "only to the extent that it is necessary to the jury's understanding of the offense" and "only when the offense would make little or no sense without also bringing in the same transaction evidence." *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). While the State argues that the video constitutes same-transaction evidence, we disagree. The events underlying the charged offense—all of which happened before Salazar was taken to the Williamson County jail—can be easily understood without reference to the video.

7

admitting evidence of prior conviction where prosecutor first learned of conviction two days before trial and "had given notice as soon as she learned of that conviction"). In this case, the prosecutor called defense counsel to inform him of the existence of the video as soon as he learned of it on April 9, 2009, narrating a portion of the events on the video to defense counsel over the phone.[10] According to the State, a copy of the video was made available to defense counsel on April 9th, and counsel received the video on April 13, 2009, the day before trial. Defense counsel consequently had notice of the existence of the video and an opportunity to review it before trial. Given these circumstances, we conclude that the trial court did not abuse its discretion in determining that the prosecution gave defense counsel reasonable notice of the evidence it was to introduce via the video.

Even if Salazar had shown that the trial court abused its discretion in either admitting the video or determining that notice was reasonable under 404(b), he does not demonstrate what harm resulted. When reviewing non-constitutional error in a criminal case, the court of appeals must disregard any error that does not affect the substantial rights of the appellant. Tex. R. App. P. 44.2(b); *Sells v. State*, 121 S.W.3d 748, 764 & n.69 (Tex. Crim. App. 2003). Accordingly, a conviction should not be reversed when, after examining the record as a whole, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect. *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005). Here, the other evidence provided

---

[10] In explaining the circumstances of the discovery of the video to the trial court, the prosecutor stated that he had understood the reference to a "video" in one of the officer's reports as referring to a recording made by the stationary video camera in the sally port at the Williamson County jail. According to the prosecutor, videos from the stationary camera are erased every 30 days, leading the prosecutor to believe that the video had been erased. When the prosecutor spoke to the testifying officers before trial, however, he was informed that the reference to a "video" referred to the "follow camera video" taken with a hand-held camera upon Salazar's arrival at the jail. The prosecutor stated that the video was then produced "immediately."

by the State, including Normand's testimony that Salazar intentionally kicked him, corroborating testimony of eyewitnesses, and photographs showing Normand's injuries, provide reasonable assurance that even erroneous admission of the video would have had only a slight effect, if any, on the jury. Further, Salazar does not show how the lack of reasonable notice of the intent to admit the video prejudiced the defense in any way. Accordingly, Salazar's first point of error is overruled.

### Due Process and Due Course of Law

In his second point of error, Salazar argues that the admission of the video violated his constitutional rights. Specifically, Salazar urges that the erroneous admission of the video denied him a fair and impartial trial, thereby infringing on his due-process rights under the United States Constitution and his due-course-of-law rights under the Texas Constitution. *See* U.S. Const. Amend. XIV, § 1; Tex. Const. Art. 1, § 19. As explained above, however, the trial court did not err in admitting the video. Further, even the erroneous admission of extraneous-offense evidence does not constitute constitutional error. *See Roethel v. State*, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.); *see also McDonald*, 179 S.W.3d at 578 (holding that constitutional error is not involved when extraneous-offense evidence is admitted without notice). Salazar's second point of error is overruled.

### Admissibility of Evidence of Prior Conviction

In his third point of error, Salazar argues that the trial court abused its discretion in admitting the testimony of detective Jones on rebuttal. Jones testified that Salazar had assaulted him in September 2003. Specifically, Jones testified that Salazar pushed him and punched him in the face after Jones had been called to the scene based on a report that Salazar was intoxicated and walking on the shoulder of Interstate Highway 35. Subsequently, Salazar was arrested.

9

Under the code of criminal procedure, "[r]ebutting testimony may be offered on the part of each party." Tex. Code Crim. Proc. Ann. art. 36.01(a)(7) (West 2007). As a general rule, the State is entitled to present, on rebuttal, any evidence that tends to refute the defensive theory and evidence introduced to support that theory. *Flannery v. State*, 676 S.W.2d 369, 370 (Tex. Crim. App. 1984). The possibility that such rebuttal evidence may encompass extraneous offenses or acts on the part of the defendant does not preclude its admission into evidence. *Yohey v. State*, 801 S.W.2d 232, 236 (Tex. App.—San Antonio 1990, pet. ref'd); *Lofton v. State*, No. 03-02-00204-CR, 2003 Tex. App. LEXIS 2338, at *36 (Tex. App.—Austin Mar. 20, 2003, no pet.) (mem. op., not designated for publication) (citing *Yohey*).

In this case, the trial court indicated that the defense had opened the door to the State's rebuttal testimony by putting on the testimony of Salazar's sister, Linda. Linda testified that, due to his disability, Salazar often has to rock back and forth to get up:

> He has to do a motion where he rocks himself up until he—he has to have a leg up in the air, which would be his right leg, because he has no—no help on the left side. So he has to motion himself up until he finally gets himself up. You know, like a turtle when a turtle's on its back, he has to do that motion until he flips.

Based on the record before us, we cannot conclude that the trial court abused its discretion in admitting Jones's testimony as rebuttal evidence.[11] As Linda's testimony regarding

<hr/>

[11] Salazar also argues that he did not receive proper notice regarding Jones's extraneous-offense testimony. However, the notice requirements of rule 404(b) apply only to evidence presented during the State's case-in-chief, not to rebuttal evidence. *See* Tex. R. Evid. 404(b); *Jaubert v. State*, 74 S.W.3d 1, 4 (Tex. Crim. App. 2002). Further, one of the bases for Salazar's notice argument is the fact that the State's notice of intent to introduce extraneous offense evidence describes the 2003 offense, cause number 03-5455-2, only as "ASSAULT W/BODILY INJURY." Salazar argues that this description did not properly indicate that the assault was of a public servant. The State's next

Salazar's physical disabilities could conceivably support the defensive theory that Salazar kicked Normand unintentionally or by accident, the admission of Jones's testimony on rebuttal to show intent or absence of mistake falls within the zone of reasonable disagreement. *See* Tex. R. Evid. 404(b). Further, on the record before us, we cannot conclude that the effect of Jones's testimony was substantially more prejudicial than probative. *See id.* R. 403. Finally, Salazar has not shown how the admission of Jones's testimony affected his substantial rights, as the other evidence presented by the State provides reasonable assurance that even erroneous admission of Jones's testimony would have had only a slight effect, if any, on the jury. Accordingly, Salazar's third point of error is overruled.

## CONCLUSION

Finding no reversible error, we affirm the judgment of the trial court.[12]

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:  May 13, 2010

Do Not Publish

_____

entry on the notice, however, bears the same date and a similar cause number (03-5456-3), and contains an offense description of "RESISTING ARREST / SEARCH."

[12] In addition, we dismiss Salazar's motion to supplement the record as moot, as the district clerk supplemented the record with the requested exhibits in December 2009.