Johnny R. SALINAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00015–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 18, 1981.

Julie Marquez, San Antonio, for appellant.

Bill White, Dist. Atty., Anton Paul Hajek, III, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

## OPINION

CANTU, Justice.

This is an appeal from a conviction for the possession of a controlled substance, heroin. Punishment was assessed at 50 years by a jury upon an indictment alleging

an enhancement count under the provisions of Tex. Penal Code § 12.42(b). The sufficiency of the evidence is not challenged.

Appellant initially complains about the trial court's permitting the State's prosecutor to inform the jury venire, during jury selection, about the punishment applicable to one charged as a habitual offender. Appellant was originally indicted as a habitual offender under Tex. Penal Code § 12.42(d).

During general remarks to the jury venire the State's prosecutor sought to inform the prospective jurors about the punishment applicable to subsequent offenders under Texas law. Appellant objected to having the enhancement counts revealed to the venire prior to the guilt/innocence phase and further objected to any reading of the enhancement counts in the indictment.

The trial court overruled the objection and the prosecutor, without directly referring to appellant's case, proceeded to inform the venire of the law applicable generally to repeat offenders and habitual offenders under Tex. Penal Code § 12.42.

The trial court then proceeded, over objection, to personally explain the mechanics of the Texas recidivist laws to the venire, including an explanation about the automatic aspects of the habitual portion of § 12.42.

Only one of the enhancement counts was ultimately submitted to the jury, the middle count being eliminated by the trial court. Thus, appellant's punishment was set by the jury with instructions permitting punishment only as a repeat offender. Appellant's objection was sufficiently preserved for our review.

Appellant relies upon the holding in *Bevill v. State*, 573 S.W.2d 781 (Tex.Cr.App. 1978) for reversal.

In *Bevill v. State, supra,* our Court of Criminal Appeals held that both the State and the defendant, in cases *where the jury is called upon to assess punishment,* have a right to qualify the jury on the full range of punishment. In effect, the Court held that in cases where an accused is charged as a repeat offender, facing punishment by a jury, guided by a prescribed *penalty range,* both the State and defense have a right to qualify the jury on the full range of punishment.

In cases where the accused is charged as a habitual offender, under Tex. Penal Code Ann. § 12.42(d), no perceivable reason was noted by the Court for allowing the prosecutor or defense attorney to inform the prospective jurors of the automatic imposition of punishment at life imprisonment upon a finding that both enhancement paragraphs were true.

In the instant case, the jury was charged on the law applicable to repeat offenders, Tex. Penal Code Ann. § 12.42(b), and not as to habitual offenders, *Id.,* § 12.42(d). Therefore, the imposition of punishment by the jury was not bridled by the knowledge that appellant's punishment was set by law automatically at any particular term of years.

In addition, the remarks of the prosecutor during voir dire amounted to nothing more than a general statement of the law applicable to punishment of subsequent offenders.

While we recognize the impropriety of the court in permitting the prosecutor to comment on the habitual aspect of the possible punishment and particularly the trial court's own interjection, we do not consider it to be reversible error, in view of events which transpired subsequently and to which we now draw our attention.

In submitting its charge to the jury on punishment, the trial court authorized punishment only within the range of punishment prescribed in Tex. Penal Code Ann. § 12.42(b).

Additionally, the trial court, in its charge to the jury on punishment, instructed them that the second count of the indictment alleged for enhancement had been withdrawn from their consideration and that they should not consider it for any purpose.

We think that the error, if any, was rendered harmless by the withdrawal from the jury of the second count of the indictment.

But even if we are to concede that appellant suffered error during voir dire examination, we would not be justified in ordering a reversal in view of an incident occurring during the State's case in chief to which we now refer.

During the direct examination of police officer Edward C. Guerra, and in answer to a question by the prosecutor, the witness replied unresponsively to the question asked, but volunteered the information that appellant and his codefendant had been arrested hundreds of times.

The jury was withdrawn and appellant requested a mistrial. The trial court immediately responded to the motion, granted a mistrial [1], and asked for a new jury panel.

Counsel for appellant sought a conference with appellant regarding the requested mistrial and immediately urged the trial court to rescind the granting of the mistrial. Appellant personally consented to the withdrawal of the mistrial and simply sought an admonishment of the witness and a ruling of the court on the admissibility of the remark.

An offer to instruct the jury was rejected by appellant, who was apparently satisfied to proceed with the trial from that juncture.

The error giving rise to the granting of the mistrial was a comment upon the criminal record of appellant and was highly prejudicial as recognized by the trial court's instantaneous response to the motion.

The error complained of during voir dire examination was of a similar nature, touching upon appellant's prior criminal history, although perhaps not as prejudicial.

■ By refusing the mistrial we are satisfied that appellant preferred to continue the trial with the same jury and under limited curative relief. An election to proceed to trial after withdrawing a motion for mistrial amounts to a waiver by appellant of any claim of prejudice from the incident thereafter, either on appeal, on motion for new trial, or otherwise. *Cardenas v. Supe-*

*rior Court,* 14 Cal.Rptr. 657, 363 P.2d 889 (1961); *People v. Keagle,* 7 Ill.2d 408, 131 N.E.2d 74 (1956); *State v. Hulet,* 159 Wash. 72, 292 P. 107 (1930).

In *People v. Keagle, supra,* the Supreme Court of Illinois, in a very similar case, stated:

In the case at bar defendant desired to go to the jury on the record as it then stood. He was then satisfied that the error alleged was not substantial and did not prejudice his case before the jury; he then was satisfied that he had a fair trial. We will not permit him to refuse the court's offer of a mistrial, gamble on the verdict of the jury being in his favor, and yet retain for use on appeal, in event of an adverse verdict, a valid claim of error based on such conduct.

131 N.E.2d at 78.

The record clearly shows that appellant's decision to withdraw his motion was voluntarily and knowingly made.

■ Finding little perceivable difference in the error complained of in both instances, we hold that appellant's ground of error was waived under the rule that improper admission of evidence does not constitute reversible error if the same or similar facts were shown by facts not objected to. *Botello v. State,* 172 Tex.Cr. 634, 362 S.W.2d 318 (1962); *Freeman v. State,* 172 Tex.Cr. 389, 357 S.W.2d 757 (1962); *Moseley v. State,* 158 Tex.Cr. 578, 258 S.W.2d 331 (1953).

By his second ground of error, appellant complains of the trial court's admitting into evidence, over objection, at the penalty phase of the trial, a prison packet containing the judgment and sentence belonging to the prior conviction alleged for enhancement in the second count of the indictment and withdrawn from the jury's consideration by the trial court.

More specifically, appellant contends for the first time on appeal that the judgment and sentence contained within State's ex-

---

1. Although the trial court spoke in terms of granting the mistrial we think a proper inter-

pretation of the record supports an offer to grant a mistrial.

hibit number 7, a prison packet, are inadmissible inasmuch as the conviction out of which the judgment and sentence arise is void.

The record fails to disclose any objection to the introduction of the items complained of, although the trial court permitted appellant's counsel the opportunity to object specifically to the proffered exhibits. There is nothing in the record to aid us either by name of instrument or page number in identifying the items complained of now.

The following appears in the record with regard to State's exhibit number 7:

"Ms. Marquez: We would also object to the introduction of this thing[2], your Honor, in that it is just—trying to find a back door to get this into evidence when the Court has already stricken this from the second paragraph of the enhancement portion of the indictment.

"The Court: All right. That is overruled."

The trial court repeatedly inquired of counsel for appellant if any other objections were to be lodged in opposition to the introduction of State's exhibit number 7. Several were given, but none as complained of on appeal.

■ It is well settled that in order to complain on appeal of error by the trial court in the admission of evidence, the ground of error presented on appeal must comport with the trial objection. *Bouchillon v. State*, 540 S.W.2d 319 (Tex.Cr.App. 1976).

As in *Bouchillon* the trial objection did not specify which portions of the lengthy prison packet were objectionable. It was, therefore, not error to overrule an objection that was too vague and general to advise the trial court of that portion of the exhibit to which the objection was directed.

■ Assuming, *arguendo*, that the objection had specifically apprised the trial court of the nature of the complaint, nevertheless, in view of the trial court's instruction to the jury withdrawing the second count

from their consideration for any purpose [*Harris v. State*, 375 S.W.2d 310 (Tex.Cr. App.1964)], and the repeated references (by the State's prosecutor, without objection, and by defense counsel during jury arguments at the punishment phase) to the conviction for possession of narcotic paraphernalia, error, if any, is waived.

■ Where the same evidence or substantially the same evidence complained of on appeal is admitted before the jury without objection, error, if any, is waived and is not before the Court for review. *Merx v. State*, 450 S.W.2d 658 (Tex.Cr.App.1970); *Love v. State*, 373 S.W.2d 242 (Tex.Cr.App. 1963).

Appellant next complains of the trial court's permitting the introduction of State's exhibits numbers 6 and 7 over objection during the punishment phase of the trial.

State's exhibits numbers 6 and 7 constitute prison packets containing photographs, judgments, sentences, commitment notices, fingerprint charts and other supporting documents.

Objection to State's exhibits numbers 6 and 7 was predicated upon an alleged lack of authentication by the record custodian of the prison records. Specifically, appellant objected that the judgment and sentence contained in each exhibit was not within the certification accompanying the exhibits. Reliance is had upon the case of *Scott v. State*, 553 S.W.2d 361 (Tex.Cr.App.1977).

■ Our Court of Criminal Appeals has recently addressed the identical complaint in *Cano v. State*, 614 S.W.2d 578 (Tex.Cr. App.1981) and *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App.1980), and has held the contention to be without merit. We are not inclined to dispute the Court's holding. Accordingly, this ground of error is overruled.

■ By his next ground of error appellant complains of the trial court's permitting several witnesses to testify on behalf of the State because the names of these witnesses were not tendered to defense counsel in response to a discovery motion.

**2.** We decline to speculate what counsel meant by the expression "this thing."

The witnesses in question were all reputation witnesses called by the State at the punishment phase of the trial. Appellant equates the State's alleged failure to comply with the discovery motion with "cloak and dagger" tactics and trial by ambush. The objection at trial complained of being deprived of the right to voir dire the jury venire on the reputation witnesses. Reliance is had upon *Riggs v. U. S.*, 280 F.2d 750 (5th Cir. 1960) and *Smith v. Estelle*, 445 F.Supp. 647 (N.D.Tex.1977).

We are of the opinion that neither of these cases supports appellant's claimed error and that reliance upon them is misplaced.

In *Riggs v. U. S., supra,* the surprise witnesses both testified to highly incriminative acts on the part of defendant during the guilt/innocence phase of the trial and went outside the scope of the conspiracy charged in the indictment.

In *Smith v. Estelle,* 445 F.Supp. 647 (N.D. Tex.1977), affirmed sub nomine, *Smith v. Estelle,* 602 F.2d 694 (5th Cir. 1979) and *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the courts were concerned with the violation of an accused's fifth amendment privilege against compelled self-incrimination brought about through the use of a surprise witness, a psychiatrist, who had interviewed the accused without notice to his attorney of record and without warning the accused that his responses would be made the "deluded instruments" of his own execution. 101 S.Ct. at 1873.

The instant case involving reputation witnesses can hardly be equated to the cases relied upon by appellant.

In passing, we note that although appellant claims to have filed a motion to discover the names of prospective witnesses there is on file an instrument designated "Motion for Discovery and to Produce" with no indication that it was ever presented to the trial court for ruling. This motion sought to discover the identity and address of an alleged informer, the statements of State's witnesses, and possible electronic recordings of oral conversations made by appellant. The record is devoid of any prior request by appellant for the names of witnesses now complained of.

Assuming, *arguendo,* that a proper request was made to the trial court by pretrial motion, nevertheless, there is no statutory requirement to provide for the production of reputation witnesses' names, *Curtis v. State,* 519 S.W.2d 883 (Tex.Cr.App.1975), although perhaps fair play would dictate otherwise in light of a proper and timely request. *Young v. State,* 547 S.W.2d 23 (Tex.Cr.App.1977). *See also Hoagland v. State,* 494 S.W.2d 186 (Tex.Cr.App.1973) (concurring opinion).

Even though defense counsel in his objection to the trial court's ruling stated that a discovery motion had been filed requesting the witnesses' names, the record does not support such a position.

In any event, we are not convinced that reversible error occurred in the absence of some showing by way of motion for new trial, bill of exception, or otherwise, that appellant learned of anything that would affect the credibility of the witnesses complained of. *Hoagland v. State, supra.*

Furthermore, we fail to perceive how the testimony of the reputation witnesses complained of could have harmed appellant in view of the cumulative nature of their testimony addressing appellant's predisposition to break the law and the evidence already before the jury without objection that appellant had been arrested hundreds of times. This ground of error is overruled.

■ Appellant next complains that the trial court permitted the State prosecutor to bolster the testimony of its witnesses.

During jury arguments on the punishment phase, counsel for appellant argued:

"... I ask you, again, to please bring in a verdict that fits the evidence and the facts, not what these officers who would say that about anyone—they could have brought in the whole police department. Any man that has been tried before, everyone would have to say his reputation is bad, everyone would have to say that ...."

In rebuttal the prosecutor argued:

"Now, of course, Mr. Brown will have you to believe that all of these police officers come in here and they testify and they come in and they say that anybody's reputation is bad. And, so will the people from the district attorney's office. Just, I mean, we'll just go around saying everybody's reputation is bad, that is our job. Well, I will tell you this: I have gone to criminal courts before and have testified that peoples' reputations were good."

Appellant immediately objected that the prosecutor was testifying without being sworn as a witness. The objection was overruled.

Whether the argument of the prosecutor was bolstering is questionable. We think, however, that the argument was invited by appellant's counsel and thus, being provoked, cannot be the basis for complaint. *Love v. State*, 533 S.W.2d 6 (Tex.Cr.App. 1976); *Turner v. State*, 482 S.W.2d 277 (Tex.Cr.App.1972); *Joshlin v. State*, 468 S.W.2d 826 (Tex.Cr.App.1971); *Singleton v. State*, 171 Tex.Cr. 196, 346 S.W.2d 328 (1961); *Meador v. State*, 113 Tex.Cr. 357, 23 S.W. 382 (1929); *Johnson v. State*, 94 Tex.Cr. 184, 249 S.W. 1056 (1923). No error is perceived.

Appellant's final contention is that the trial court erred in failing to grant his motion to suppress because the informant failed to state where he received his information, when he received it, and because he failed to provide sufficient details to substantiate by surveillance.

An account of the transaction is necessary in order to properly address appellant's contentions.

On September 28, 1976, at about 6:00 P.M., Officer Rudy Longoria of the San Antonio Police Department personally met with a confidential informant whom he had previously known and from whom he had previously received information concerning narcotic trafficking which had proven to be true and correct. The meeting took place in the vicinity of Jack's Ice House where the informant related to Longoria that two subjects identified as appellant and Felix Ricondo, both personally known by Longoria and his partner, Officer Edward Guerra, were that afternoon going to make a heroin purchase and that they were already in the process of making the purchase.

Appellant and his companion, Ricondo, were to be driving a particularly described vehicle belonging to Ricondo, and according to the informant, appellant and Ricondo were to go to a location in the area of S.W. 19th and Vera Cruz Streets to make the purchase.

Longoria and his partner drove in their unmarked car to Jack's Ice House, a known drug connection, located relatively close to the alleged scene of the planned transaction. Appellant and Ricondo were seen at the icehouse in the described vehicle as they departed and headed for the intersection of S.W. 19th and Vera Cruz.

Once there, appellant and Ricondo circled the block and drove to Ray's Drive-In, another known drug connection located three to four blocks away, where appellant and Ricondo stopped for a minute or so. Appellant and Ricondo then returned to S.W. 19th Street and Vera Cruz, where they parked just east of the intersection on Vera Cruz Street and sat in the car for several minutes as if waiting for someone.

Appellant then got out of the car, went to the intersection, looked around, and started to walk north on S.W. 19th Street.

Ricondo drove away in a different direction under the watchful eyes of Longoria and Guerra, who were observing the whole episode through binoculars.

The officers drove off behind Ricondo, who went down Vera Cruz for a distance of some ten blocks to a particular house on Vera Cruz and Picoso Streets, known to belong to a drug addict.

Ricondo went inside the house for a few minutes, then drove back to the intersection of Vera Cruz and S.W. 19th, where he picked up appellant. They left the area at a high rate of speed with Longoria and Guerra in pursuit and calling for assistance.

**404**

Some distance from the intersection of Vera Cruz and S.W. 19th Streets, appellant and Ricondo came to a sudden stop on the side of the road for no apparent reason.

Longoria and Guerra, trailing behind by several blocks, drove up to the stopped vehicle. Longoria stepped out with badge in hand and identified himself as a police officer. Guerra got out of the vehicle and ran around to the passenger side of Ricondo's car where appellant was seated. At about the same time Longoria saw Ricondo hand over to appellant a clear plastic bag of white powder containing suspected heroin. Appellant in turn, took the bag and dropped it between his feet on the floor board where it remained visible until retrieved by Guerra.

At the outset we begin our discussion upon the premise that this is not a case *of search* incident to an arrest without a warrant, but rather an arrest based upon the commission of a felony within the arresting officers' presence or view. Tex.Code Crim. Pro. art. 14.01.

■ It is undisputed that appellant's vehicle was voluntarily stopped by the side of a public street when the arresting officers witnessed from a position outside Ricondo's car the transferring of a controlled substance from Ricondo to appellant who momentarily possessed it and who finally dropped it simultaneously with the arresting officers identifying themselves.

While undoubtedly the officers had probable cause to stop the vehicle based upon a violation of the traffic laws regulating speeding, it was unnecessary to do so in view of the voluntary stopping. Being so authorized, they were therefore in a position to lawfully observe the actors in the stopped vehicle.

The matter then becomes a question of probable cause to arrest for possession of a controlled substance when the alleged contraband is personally seen in the possession of appellant coupled with the information previously received from a reliable informant and the independent corroboration gathered through surveillance.[3]

Appellant argues that *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), mandates that it be shown how the informant obtained the information related to police officers and that *Heredia v. State*, 468 S.W.2d 833 (Tex.Cr.App.1971) requires a showing of "when" the informant obtained the information.

Without deciding whether the arrest and subsequent seizure violated the test of reliability in *Aguilar* and of time in *Heredia* we hold that the seizure was proper incident to an arrest for an offense committed within the presence and viewing of police officers pursuant to Tex.Code Crim.Ann. art. 14.01; *Hamilton v. State*, 590 S.W.2d 503 (Tex.Cr. App.1979).

The trial court did not err in overruling appellant's motion to suppress.

We have examined appellant's *pro se* brief and have considered the contentions raised therein, some of which duplicate contentions raised by appellate counsel. We find them to be without merit.

■ An examination of the record reveals that appellant was erroneously sentenced to serve a term of not less than fifteen years nor more than fifty. A conviction for possession of heroin carries a possible punishmnent of not less than two nor more than twenty years, Tex.Rev.Civ. Stat.Ann. art. 4476–15, §§ 4.04(b)(1) and 4.01(b)(2) (Vernon 1979)[4], and when enhanced by one prior conviction a punishment of not less than five years nor more than 99 years, or life. Tex.Penal Code § 12.42(b); Tex.Penal Code § 12.32. Under the indeterminate sentence law appellant's sentence should have been not less than five years and not more than fifty years. Article 42.09 V.A.C.C.P.

3. As in *Gonzales v. State*, 467 S.W.2d 454 (Tex. Cr.App.1971) and *Muggley v. State*, 473 S.W.2d 470 (Tex.Cr.App.1971), almost every fact except the presence of a controlled substance was verified through surveillance.

4. This article also allows, in addition to imprisonment, punishment by a fine not to exceed $10,000.00. This subsection is not applicable in the case at bar since no fine was assessed by the jury.

This court is empowered to enter such orders as the law and the nature of the case may require including the correction of error and, accordingly, the sentence is reformed to reflect the proper punishment under our indeterminate sentence law. *Ocker v. State*, 477 S.W.2d 288 (Tex.Cr.App. 1972); *Asay v. State*, 456 S.W.2d 903 (Tex. Cr.App.1970); Article 44.24(b) V.A.C.C.P. We, therefore reform the sentence to read not less than five years and not more than fifty years' confinement.

As reformed the judgment is affirmed.