Herbert L. JACK, Appellant,

v.

**HOLIDAY WORLD OF HOUSTON,**
Forest River, Inc., and Bank Of
America, N.A., Appellees.

No. 01–06–00816–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 19, 2008.

Shari Goldsberry, Goldsberry & Associates, PLLC, Joseph R. Willie, II, Willie & Associates, P.C., Houston, TX, for Appellant.

Marcy Greer, Austin, TX, Sara Janes Wolf, Paul Trahan, Fulbright & Jaworski LLP, John M. Sigman, Austin, TX, D.M. Freedman, Freedman & Price, Bellaire, TX, Kari Lynn Robinson, Houston, TX, for Appellees.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

TIM TAFT, Justice.

Appellant, Herbert L. Jack, brought suit against appellees, Holiday World of Houston ("Holiday World"), Forest River, Inc. ("Forest River"), and Bank of America, N.A. ("Bank of America"), after he purchased from Holiday World, with financing by Bank of America, a motor home that was built by Forest River. Jack appeals the final judgment of the court. We consider whether the court

erred in (1) reconstituting the jury after declaring a mistrial, (2) overruling Jack's *Batson* challenges, and (3) granting partial summary judgment. We affirm.

## Facts

In May 2000, Jack purchased from Holiday World a motor home built by Forest River. Jack financed the purchase through a retail installment contract ("the Contract") that was later assigned to Bank of America. Subsequently, Jack brought a complaint under section 6.07 of the former Texas Motor Vehicle Commission Code,[1] alleging various electrical and mechanical defects with the motor home. The administrative law judge ("ALJ") determined that Jack failed "to show by a preponderance of the evidence that any warrantable defect currently exists which justifies relief under Section 6.07 of the Texas Motor Vehicle Commission Code." The ALJ issued an order denying all relief sought, which Jack did not appeal. Rather, Jack filed suit in district court against Holiday World, Forest River, and Bank of America (collectively, "appellees"), alleging breach of contract, violations of the Texas Trade Deceptive Practices–Consumer Protection Act ("DTPA"),[2] revocation of acceptance, breach of warranty, and derivative claims based on the Contract. Bank of America counterclaimed against Jack for breach of contract, alleging that Jack had borrowed $98,079.57 from Bank of America for the motor home purchase, but had repaid only approximately $25,000.

Appellees each moved for summary judgment. The trial court's interlocutory order granted, in part, those motions, ordering

that Plaintiff Herbert Jack's claim for revocation is dismissed as to all Defendants and that Plaintiff take nothing from such claim.

... that Plaintiff's claim for breach of an express warranty as to Defendant Forest River Inc. is dismissed and that Plaintiff take nothing from Defendant Forest River Inc. from such claim.

... that Plaintiff's claims under the [DTPA] as to the Defendant Bank of America National Association are hereby dismissed and that Plaintiff take nothing from Defendant Bank of America National Association from such claims.

After a trial on the remaining issues, the court entered a final judgment in favor of Jack against Holiday World for $3,300 for breach of implied warranty and in favor of Bank of America on its counterclaim against Jack in the amount of $126,428.96 for breach of contract and $48,103 for attorney's fees.

## Reconstituting the Jury after a Mistrial Was Declared

In his first issue, Jack contends that the trial court erred in reconstituting the jury after having declared a mistrial, despite his having acquiesced in continuing the trial and his agreement that no appeal would be taken from the decision to continue the trial. The trial court's actions of which Jack complains occurred after Jack had violated a standing motion in limine. During Holiday World's examination of him, Jack asked Holiday World's counsel, "Could I ask you a quick question? Who asked you this question: 'How much mon-

---

1. *See* Act of May 23, 1983, 68th Leg., R.S., ch. 651, § 7, 1983 Tex. Gen. Laws 4134, 4143–46 (amended 1987), *repealed by* Act of may 22, 2001, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws 4570, 5020.

2. *See* TEX. BUS. COM.CODE ANN. §§ 17.01–.854 (Vernon 2002 & Supp.2007).

ey did the nigger make on the sale of the RV?'" Jack complains of what followed:

The Court: All right. Ladies and gentlemen of the jury—I've had enough. Okay? Ladies and gentlemen of the jury, I am at this time declaring a mistrial in this case. You guys are free to go home. I apologize for the time that you have wasted in this case. Please go back into the jury room, and I am going to come visit with you in a second.

(Jury not present)

I am assuming the defendants were going to move for a mistrial.

[Counsel]: I don't know, Your Honor. Could we have a minute?

The Court: Yes.

[Counsel]: I would like to talk to my client. (off the record)

The Court: I don't know if the defendants have decided whether or not they indeed want to move for a mistrial or not. Let me tell you that I am comfortable that if I have the agreement of all parties, that I can instruct the jury that my remark was being taken back by the Court and that no appellate point will arise from my stating to the jury both that I was declaring a mistrial, and following that up with a declaration that my remark is taken back by me and should not enter into their deliberations. If I have an agreement by all that those two things will not constitute an appellate point by anyone and that everyone agrees to proceed with this trial within the parameters as just stated by me, I will continue with the trial of this cause.

If, however, there is no agreement or for whatever reason a defendant wants to move for a mistrial, I am undecided whether or not to carry that motion or to grant it at this point.

I just haven't thought that one through. But I wanted to let y'all think about my other point.

Lastly, if a mistrial is granted, I will take up after the jury is excused—not necessarily today, but at a later date—a motion for costs and allow the defendants the opportunity to brief the issue and whether or not they are indeed entitled and, if so, to what extent, and obviously allow the plaintiffs a chance to respond to that.

Those are the three parameters I have thought out. I don't know if y'all have had a chance to think about where we go from here, but I want y'all to know what my thoughts were.

. . .

[Counsel]: Your Honor, may I go on the record for Mr. Jack a moment?

The Court: Yes.

[Counsel]: All right. Mr. Jack, you have been instructed not to do that, correct?

[Jack]: Instructed not to do what?

[Counsel]: Not to—you were aware of the motion in limine, correct, on racial epithets?

[Jack]: No, sir.

. . .

The Court: Were you informed by your counsel not to go into any racial epithets, dispersions, buzz words in front of the jury?

[Jack]: I did not see a motion in limine.

The Court: That is not the question I asked you, sir.

[Jack]: No.

The Court: Did your counsel tell you that you could not say the word you said in front of the jury?

[Jack]: They didn't tell me that I could not say it. They didn't coach me to say it.

[Counsel]: Mr. Jack, if the Court is seeking agreement of the parties, what would be your instructions to counsel after—

[Jack]: We're not going to discuss this here, Counsel. My instruction to you would be between me and you, and not now.

[Counsel]: I understand. I don't know what to tell the Court, Mr. Jack.

[Jack]: I can tell him. Why don't the Court ask me?

The Court: Are you in agreement that this case can proceed notwithstanding that I told the jury that I was declaring a mistrial if I instruct the jury when they come back that there was no mistrial, that I misspoke, and that they are to disregard not only my comments but also your comment? Are you in agreement that the case can proceed under those parameters?

[Jack]: Yes.

. . .

[Counsel]: . . . I would like to know if Mr. Jack is going to waive any right to appeal the outcome of this trial based upon any comments you made regarding mistrial.

[Jack]: No, sir, I'm not giving up any of my rights in no shape, form, or fashion.

The Court: The only specific right, Mr. Jack, was the right to appeal the continuation of this trial notwithstanding my remark regarding the mistrial. That is the only issue we're addressing.

[Jack]: Yes. I just want it understood, sir. Any right that the statutes of the state of Texas or the United States give me as a plaintiff in this case, I am not waiving.

The Court: With the exception of a right that you may or may not have regarding the mistrial comment; is that correct?

[Jack]: I don't know if I understand what you're saying.

The Court: I think—and I don't know the answer to it, Mr. Jack. I'm telling you I don't know the answer to it. But if I have the agreement of everyone to proceed with this trial notwithstanding the remark you made, my remark of the mistrial, what I don't want—and what no one else wants—to be an appellate point is the continuation of the trial notwithstanding my remark on a mistrial. And no one's asking you to waive any other rights you may have. What I want to make sure, though, is that everyone is in agreement that they will not appeal that single issue.

[Jack]: Tell me if I'm understanding you correctly. What you are stating is that the fact that you stated there would be a mistrial—that anyone would appeal the fact that you stated that there would be a mistrial? Is that correct? Is that what you said? That's the way I'm interpreting what you [sic] saying.

The Court: Close. That if we agree to go forward and I bring the jury back in and I tell them there is no mistrial, disregard my remark on the mistrial, that you, the bank, Holiday World, and Forest River will not appeal that single issue.

[Jack]: That single issue of a mistrial.

The Court: Correct.

[Jack]: Okay.

The Court: You agree to that?

[Jack]: Yes.

■■■ Jack contends that the "trial court action in using its 'leverage' violates the mandate and spirit" of the Code of Judicial Conduct and asserts that the trial

court "was without authority to reconstitute the jury and proceed with trial" without any discussion of his agreement and what effect it would have on this appellate issue. It is clear from the record that neither the trial court nor appellees would have agreed to resume the trial had everyone not expressly agreed to continue and to waive the issue for appeal. Jack expressly agreed to continue the trial and to waive appeal of the issue. Jack nonetheless contends that, at the point at which the trial court discharged the jury, it lost subject-matter jurisdiction over the case. He contends that, because that subject-matter jurisdiction cannot be created by agreement or waiver, he cannot be held to his express agreement and waiver of the issue.

Jack cites no authority for his contention that the trial court's ordering of a mistrial deprives it of subject-matter jurisdiction. Although there are no precedential civil cases concerning whether a trial court has the authority to rescind a mistrial order, in criminal cases, courts have held that a trial court does not lose subject-matter jurisdiction after entering a mistrial to rescind its mistrial order. *See Rodriguez v. State,* 852 S.W.2d 516, 520 (Tex.Crim.App.1993) ("[A]t least as a matter of jurisdiction, the trial court does not lack authority to withdraw or rescind its order of mistrial. . . . That an order granting a mistrial that is not subsequently withdrawn does indeed have the effect of nullifying all proceedings to that point does not mean the trial court may not rescind that order, and continue with the trial, so long as that remains a viable option under the circumstances."); *Montemayor v. State,* 55 S.W.3d 78, 87 n. 2 (Tex.App.–Austin 2001, no pet.) ("By failing to discharge the jury and by ordering the jury to resume deliberation, the court

implicitly withdrew its decision to grant a mistrial."); *cf. Fruehauf Corp. v. Carrillo,* 848 S.W.2d 83, 84 (Tex.1993) (holding that trial court had authority, during 75–day period in which it had plenary power to rule on motion for new trial, to vacate its previous order granting new trial).[3] We hold that the trial court did not lose jurisdiction to withdraw the order of mistrial and to resume trial.

Because the trial court retained jurisdiction to rescind its mistrial order, Jack cannot now complain of the trial court's action to which he explicitly agreed. In *Salinas v. State,* the trial court granted a mistrial when a witness made a prejudicial statement on the stand, much as what occurred here. *See Salinas v. State,* 625 S.W.2d 397, 400 (Tex.App.–San Antonio 1981, no pet.). The defendant then asked the court to rescind the mistrial and to allow the trial to proceed. *See id.* On appeal, the court held that "[a]n election to proceed to trial after withdrawing a motion for mistrial amounts to a waiver by appellant of any claim of prejudice from the incident thereafter, either on appeal, on motion for new trial, or otherwise." *Id.*

The same rationale applies here. Jack waived appeal of the court's declaring a mistrial and then rescinding that order. *See Kelly v. Cunningham,* 848 S.W.2d 370, 371 (Tex.App.–Houston [1st Dist.] 1993, no writ) ("A party may not lead a trial court into error and then complain about it on appeal."); *see also Doucet v. Owens–Corning Fiberglas Corp.,* 966 S.W.2d 161, 165 (Tex.App.–Beaumont 1998, pet. denied) (holding that plaintiff could not complain on appeal about juror misconduct when plaintiff had opposed motion for mistrial on same ground).

We overrule issue one.

---

**3.** *See also Willie v. Donovan & Watkins, Inc.,* No. 01–00–01039–CV, 2002 WL 537682, at *2 (Tex.App.–Houston [1st Dist.] Apr. 11, 2002, no pet.) (not designated for publication).

### *Batson* Challenge

In his second issue, Jack complains that the court erred in overruling his *Batson* challenge to appellees' use of their peremptory strikes on two potential jurors. *See Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986).

A trial court's ruling on a *Batson* challenge is reviewed for an abuse of discretion. *Baker v. Sensitive Care–Lexington Place Health Care, Inc.,* 981 S.W.2d 753, 757 (Tex.App.–Houston [1st Dist.] 1998, no pet.) (citing *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997)). A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Id.*

Resolution of a *Batson* challenge is a three-step process: (1) the party challenging the strike must establish a prima facie case of racial discrimination; (2) if the party challenging the strike does so, the striking party must come forward with a race-neutral explanation; and (3) if the striking party does so, the party challenging the strike must prove purposeful racial discrimination. *Miller–El v. Dretke,* 545 U.S. 231, 239, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005); *Baker,* 981 S.W.2d at 755 (citing *Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995)). Jack complains only that the trial court failed to complete the third step of the process, giving "short-shrift" to his *Batson* challenges.

Appellees exercised two of their peremptory strikes on venireperson 10, Burrell, and venireperson 31, Babineaux. Jack raised a *Batson* complaint, contending that both Burrell and Babineaux were struck from the jury because they were African American. The trial court conducted a *Batson* hearing, at which appellees explained that Burrell was struck because he was "fiddling with his cell phone" and "laughing regularly" during voir dire, indicating that he would not give the case the attention that it deserved. The court agreed:

> I find credible the attorney's remarks concerning the way [Burrell] approached the voir dire process. I saw him making remarks throughout the voir dire process to other jurors notwithstanding that he wasn't being talked to. I saw him fiddling with his cell phone and/or Palm Pilot.

Appellees explained that they used a peremptory strike on Babineaux because she was a busy doctor who indicated a desire to avoid serving on the jury. Babineaux had stated that she was about to start a long-awaited vacation and could not give the case her full attention. Appellees further explained that physicians are generally preoccupied and do not make good jurors. The trial court recalled that Babineaux "wanted off this jury, said it in so many words." The court overruled Jack's *Batson* challenges, finding that both jurors had been struck for race-neutral reasons. *See Brumfield v. Exxon Corp.,* 63 S.W.3d 912, 916 (Tex.App.–Houston [14th Dist.] 2002, pet. denied) ("[T]he trial court may believe or not believe the explanation offered by the party who exercised the peremptory challenge. Whether the race-neutral explanation should be believed is purely a question for the trial court.").

Jack was given the opportunity to show purposeful discrimination as to each of the contested peremptory strikes. After appellees stated their race-neutral reasons for striking Burrell, Jack asked, "Do I get to show pretext on that?" The trial court responded, "I just finished saying that I saw him fiddling with his cell phone, too; and I saw him laughing as well. But you may go ahead and say they didn't see what I saw. Go ahead." Jack asked more

questions about what appellees had "heard" from Burrell that led them to use a peremptory strike on him and concluded with, "That's all." Similarly, after appellees had stated their reasons for striking Babineaux, the trial court stated, "I do remember our discussion with her. She wanted off this jury, said it in so many words. I am concerned that if she is selected, that she will indeed do a disservice, through no fault of her own, to the parties in this dispute." Jack responded with several questions directed at appellees and, when asked if there was anything further, responded, "That's all from me, Your Honor." Based on this record, we conclude that Jack has failed to show in what way the court gave "short-shrift" to his *Batson* challenges.

We overrule issue two.

### Partial Summary Judgment

■■■ In his last issue, Jack complains that the court erred by granting, in part, appellees' motions for summary judgment. Jack contends that "the gravamen of all of the motions was that the [appellees'] claims were barred under the doctrines of *res judicata* and/or collateral estoppel." The partial summary judgment order does not specify the grounds on which it was granted. When, as here, a trial court does not state the reasons for its ruling, the summary judgment can be upheld upon any theory alleged in the motion. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995).

As stated previously, the trial court ordered in its partial summary judgment that Plaintiff Herbert Jack's claim for revocation is dismissed as to all Defendants and that Plaintiff take nothing from such claim.

... that Plaintiff's claim for breach of an express warranty as to Defendant Forest River Inc. is dismissed and that Plaintiff take nothing from Defendant Forest River Inc. from such claim.

... that Plaintiff's claims under the [DTPA] as to the Defendant Bank of America National Association are hereby dismissed and that Plaintiff take nothing from Defendant Bank of America National Association from such claims.

■■■ Each of the motions for summary judgment raised multiple grounds upon which the trial court could have granted the motions.[4] Jack has failed to "attack all independent bases or grounds that fully support [the] complained-of ruling or judgment." *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 681 (Tex.App.–Houston [1st Dist.] 2002, no pet.). "[I]f an independent ground fully supports the complained-of ruling or judgment, but the

---

4. The trial court dismissed Jack's revocation claim against Holiday World. Holiday World challenged Jack's revocation claim in its motion for summary judgment by raising, in addition to *res judicata*, that acceptance had occurred as a matter of law by Jack's length of use, extent of use, and failure to attempt to revoke acceptance for two years after his purchase of the motor home. The trial court dismissed Jack's breach-of-express-warranty claim against Forest River. In its motion for summary judgment, Forest River attacked Jack's breach-of-express-warranty claim by alleging that no such claim could be made as a matter of law because Jack could not estab-

lish an express affirmation of fact or promise by Forest River that was part of a bargain upon which Jack had relied. The trial court dismissed Jack's DTPA claims against Bank of America. In its motion for summary judgment, Bank of America challenged Jack's DTPA claim as a matter of law, contending that the DTPA "does not attach derivative liability to a defendant based on an innocent involvement in a business transaction." Bank of America further contended that there was no evidence that Bank of America had committed a deceptive act that could have been a producing cause of Jack's alleged damages.

**50**

appellant assigns no error to that independent ground, then (1) we must accept the validity of that unchallenged independent ground ... and thus (2) any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment." *Id.* Because Jack failed to attack any grounds other than *"res judicata* and/or collateral estoppel," we must affirm the court's partial summary judgment. *See id.*

■ Furthermore, to the extent that Jack attempts to raise a complaint as to the competency of the summary-judgment evidence, such argument is inadequately briefed. Jack fails to provide any citations to the record and fails to identify specifically any statements that he contends are "unsubstantiated legal and factual conclusions unsupported by the evidence." *See* Tex.R.App. P. 38.1(h).

We overrule issue three.

### Conclusion

We affirm the judgment of the trial court.

Holiday World's "Motion to Conclude Appeal Despite Appellant's Death" under Texas Rule of Appellate Procedure 7.1(a) is overruled as moot. *See* Tex.R.App. P. 7.1(a) ("If a party to a civil case dies after the trial court renders judgment but before the case has been finally disposed of on appeal, the appeal may be perfected, and the appellate court will proceed to adjudicate the appeal as if all parties were alive. The appellate court's judgment will have the same force and effect as if rendered when all parties were living. The decedent party's name may be used on all papers.").