Opinion issued June 19, 2008 
     













In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00816-CV




HERBERT L. JACK, Appellant

V.

HOLIDAY WORLD OF HOUSTON, FOREST RIVER, INC., and BANK OF
AMERICA, N.A., Appellees




On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2002-26339




O P I N I O N
            Appellant, Herbert L. Jack, brought suit against appellees, Holiday World of
Houston (“Holiday World”), Forest River, Inc. (“Forest River”), and Bank of
America, N.A. (“Bank of America”), after he purchased from Holiday World, with
financing by Bank of America, a motor home that was built by Forest River. Jack
appeals the final judgment of the court. We consider whether the court erred in (1)
reconstituting the jury after declaring a mistrial, (2) overruling Jack’s Batson
challenges, and (3) granting partial summary judgment. We affirm.
Facts
          In May 2000, Jack purchased from Holiday World a motor home built by
Forest River. Jack financed the purchase through a retail installment contract (“the
Contract”) that was later assigned to Bank of America. Subsequently, Jack brought
a complaint under section 6.07 of the former Texas Motor Vehicle Commission
Code,


 alleging various electrical and mechanical defects with the motor home. The
administrative law judge (“ALJ”) determined that Jack failed “to show by a
preponderance of the evidence that any warrantable defect currently exists which
justifies relief under Section 6.07 of the Texas Motor Vehicle Commission Code.” 
The ALJ issued an order denying all relief sought, which Jack did not appeal. Rather,
Jack filed suit in district court against Holiday World, Forest River, and Bank of
America (collectively, “appellees”), alleging breach of contract, violations of the
Texas Trade Deceptive Practices–Consumer Protection Act (“DTPA”),


 revocation
of acceptance, breach of warranty, and derivative claims based on the Contract. Bank
of America counterclaimed against Jack for breach of contract, alleging that Jack had
borrowed $98,079.57 from Bank of America for the motor home purchase, but had
repaid only approximately $25,000. 
          Appellees each moved for summary judgment. The trial court’s interlocutory
order granted, in part, those motions, ordering
that Plaintiff Herbert Jack’s claim for revocation is dismissed as to all
Defendants and that Plaintiff take nothing from such claim.
 
. . . that Plaintiff’s claim for breach of an express warranty as to
Defendant Forest River Inc. is dismissed and that Plaintiff take nothing
from Defendant Forest River Inc. from such claim.
 
. . . that Plaintiff’s claims under the [DTPA] as to the Defendant Bank
of America National Association are hereby dismissed and that Plaintiff
take nothing from Defendant Bank of America National Association
from such claims.

          After a trial on the remaining issues, the court entered a final judgment in favor
of Jack against Holiday World for $3,300 for breach of implied warranty and in favor
of Bank of America on its counterclaim against Jack in the amount of $126,428.96
for breach of contract and $48,103 for attorney’s fees. 
 
Reconstituting the Jury after a Mistrial Was Declared
          In his first issue, Jack contends that the trial court erred in reconstituting the
jury after having declared a mistrial, despite his having acquiesced in continuing the
trial and his agreement that no appeal would be taken from the decision to continue
the trial. The trial court’s actions of which Jack complains occurred after Jack had
violated a standing motion in limine. During Holiday World’s examination of him,
Jack asked Holiday World’s counsel, “Could I ask you a quick question? Who asked
you this question: ‘How much money did the nigger make on the sale of the RV?’” 
Jack complains of what followed:
The Court:All right. Ladies and gentlemen of the jury—I’ve had
enough. Okay? Ladies and gentlemen of the jury, I am at
this time declaring a mistrial in this case. You guys are
free to go home. I apologize for the time that you have
wasted in this case. Please go back into the jury room, and
I am going to come visit with you in a second.
 
(Jury not present)
 
I am assuming the defendants were going to move for a mistrial.
 
[Counsel]:I don’t know, Your Honor. Could we have a minute?
 
The Court:Yes.
 
[Counsel]:I would like to talk to my client.
 
(off the record)
 
The Court:I don’t know if the defendants have decided whether or not
they indeed want to move for a mistrial or not. Let me tell
you that I am comfortable that if I have the agreement of all
parties, that I can instruct the jury that my remark was
being taken back by the Court and that no appellate point
will arise from my stating to the jury both that I was
declaring a mistrial, and following that up with a
declaration that my remark is taken back by me and should
not enter into their deliberations. If I have an agreement by
all that those two things will not constitute an appellate
point by anyone and that everyone agrees to proceed with
this trial within the parameters as just stated by me, I will
continue with the trial of this cause.
 
If, however, there is no agreement or for whatever reason
a defendant wants to move for a mistrial, I am undecided
whether or not to carry that motion or to grant it at this
point. I just haven’t thought that one through. But I
wanted to let y’all think about my other point. 
 
Lastly, if a mistrial is granted, I will take up after the jury
is excused—not necessarily today, but at a later date—a
motion for costs and allow the defendants the opportunity
to brief the issue and whether or not they are indeed
entitled and, if so, to what extent, and obviously allow the
plaintiffs a chance to respond to that.
 
Those are the three parameters I have thought out. I don’t
know if y’all have had a chance to think about where we go
from here, but I want y’all to know what my thoughts were.
 
. . .
 
[Counsel]:Your Honor, may I go on the record for Mr. Jack a
moment?
 
The Court:Yes.
 
[Counsel]:All right. Mr. Jack, you have been instructed not to do
that, correct?
 
[Jack]:Instructed not to do what?
 
[Counsel]:Not to—you were aware of the motion in limine, correct,
on racial epithets?
 
[Jack]:No, sir.
 
. . .
 
The Court:Were you informed by your counsel not to go into any
racial epithets, dispersions, buzz words in front of the jury?
 
[Jack]:I did not see a motion in limine.
 
The Court:That is not the question I asked you, sir.
 
[Jack]:No.
 
The Court:Did your counsel tell you that you could not say the word
you said in front of the jury?
 
[Jack]:They didn’t tell me that I could not say it. They didn’t
coach me to say it.
 
[Counsel]:Mr. Jack, if the Court is seeking agreement of the parties,
what would be your instructions to counsel after—
 
[Jack]:We’re not going to discuss this here, Counsel. My
instruction to you would be between me and you, and not
now.
 
[Counsel]:I understand. I don’t know what to tell the Court, Mr. Jack.
 
[Jack]:I can tell him. Why don’t the Court ask me?
 
The Court:Are you in agreement that this case can proceed
notwithstanding that I told the jury that I was declaring a
mistrial if I instruct the jury when they come back that
there was no mistrial, that I misspoke, and that they are to
disregard not only my comments but also your comment? 
Are you in agreement that the case can proceed under those
parameters?
 
[Jack]:Yes.
 
. . .
 
[Counsel]:. . . I would like to know if Mr. Jack is going to waive any
right to appeal the outcome of this trial based upon any
comments you made regarding mistrial.
 
[Jack]:No, sir, I’m not giving up any of my rights in no shape,
form, or fashion.
 
The Court:The only specific right, Mr. Jack, was the right to appeal
the continuation of this trial notwithstanding my remark
regarding the mistrial. That is the only issue we’re
addressing.
 
[Jack]:Yes. I just want it understood, sir. Any right that the
statutes of the state of Texas or the United States give me
as a plaintiff in this case, I am not waiving.
 
The Court:With the exception of a right that you may or may not have
regarding the mistrial comment; is that correct?
 
[Jack]:I don’t know if I understand what you’re saying.
 
The Court:I think—and I don’t know the answer to it, Mr. Jack. I’m
telling you I don’t know the answer to it. But if I have the
agreement of everyone to proceed with this trial
notwithstanding the remark you made, my remark of the
mistrial, what I don’t want—and what no one else
wants—to be an appellate point is the continuation of the
trial notwithstanding my remark on a mistrial. And no
one’s asking you to waive any other rights you may have. 
What I want to make sure, though, is that everyone is in
agreement that they will not appeal that single issue.
 
[Jack]:Tell me if I’m understanding you correctly. What you are
stating is that the fact that you stated there would be a
mistrial—that anyone would appeal the fact that you stated
that there would be a mistrial? Is that correct? Is that what
you said? That’s the way I’m interpreting what you [sic]
saying.
 
The Court:Close. That if we agree to go forward and I bring the jury
back in and I tell them there is no mistrial, disregard my
remark on the mistrial, that you, the bank, Holiday World,
and Forest River will not appeal that single issue.
 
[Jack]:That single issue of a mistrial.
 
The Court:Correct.
 
[Jack]:Okay.
 
The Court:You agree to that?
 
[Jack]:Yes.

          Jack contends that the “trial court action in using its ‘leverage’ violates the
mandate and spirit” of the Code of Judicial Conduct and asserts that the trial court
“was without authority to reconstitute the jury and proceed with trial” without any
discussion of his agreement and what effect it would have on this appellate issue. It
is clear from the record that neither the trial court nor appellees would have agreed
to resume the trial had everyone not expressly agreed to continue and to waive the
issue for appeal. Jack expressly agreed to continue the trial and to waive appeal of
the issue. Jack nonetheless contends that, at the point at which the trial court
discharged the jury, it lost subject-matter jurisdiction over the case. He contends that,
because that subject-matter jurisdiction cannot be created by agreement or waiver, he
cannot be held to his express agreement and waiver of the issue. 
          Jack cites no authority for his contention that the trial court’s ordering of a
mistrial deprives it of subject-matter jurisdiction. Although there are no precedential
civil cases concerning whether a trial court has the authority to rescind a mistrial
order, in criminal cases, courts have held that a trial court does not lose subject-matter
jurisdiction after entering a mistrial to rescind its mistrial order. See Rodriguez v.
State, 852 S.W.2d 516, 520 (Tex. Crim. App. 1993) (“[A]t least as a matter of
jurisdiction, the trial court does not lack authority to withdraw or rescind its order of
mistrial. . . . That an order granting a mistrial that is not subsequently withdrawn
does indeed have the effect of nullifying all proceedings to that point does not mean
the trial court may not rescind that order, and continue with the trial, so long as that
remains a viable option under the circumstances.”); Montemayor v. State, 55 S.W.3d
78, 87 n.2 (Tex. App.—Austin 2001, no pet.) (“By failing to discharge the jury and
by ordering the jury to resume deliberation, the court implicitly withdrew its decision
to grant a mistrial.”); cf. Fruehauf Corp. v. Carrillo, 848 S.W.2d 83, 84 (Tex.1993)
(holding that trial court had authority, during 75-day period in which it had plenary
power to rule on motion for new trial, to vacate its previous order granting new trial).


 
We hold that the trial court did not lose jurisdiction to withdraw the order of mistrial
and to resume trial.
          Because the trial court retained jurisdiction to rescind its mistrial order, Jack
cannot now complain of the trial court’s action to which he explicitly agreed. In
Salinas v. State, the trial court granted a mistrial when a witness made a prejudicial
statement on the stand, much as what occurred here. See Salinas v. State, 625 S.W.2d
397, 400 (Tex. App.—San Antonio 1981, no pet.). The defendant then asked the
court to rescind the mistrial and to allow the trial to proceed. See id. On appeal, the
court held that “[a]n election to proceed to trial after withdrawing a motion for
mistrial amounts to a waiver by appellant of any claim of prejudice from the incident
thereafter, either on appeal, on motion for new trial, or otherwise.” Id. 
 
          The same rationale applies here. Jack waived appeal of the court’s declaring
a mistrial and then rescinding that order. See Kelly v. Cunningham, 848 S.W.2d 370,
371 (Tex. App.—Houston [1st Dist.] 1993, no writ) (“A party may not lead a trial
court into error and then complain about it on appeal.”); see also Doucet v.
Owens–Corning Fiberglas Corp., 966 S.W.2d 161, 165 (Tex. App.—Beaumont 1998,
pet. denied) (holding that plaintiff could not complain on appeal about juror
misconduct when plaintiff had opposed motion for mistrial on same ground). 
          We overrule issue one.
Batson Challenge
          In his second issue, Jack complains that the court erred in overruling his Batson
challenge to appellees’ use of their peremptory strikes on two potential jurors. See
Batson v. Kentucky, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719 (1986).
          A trial court’s ruling on a Batson challenge is reviewed for an abuse of
discretion. Baker v. Sensitive Care–Lexington Place Health Care, Inc., 981 S.W.2d
753, 757 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (citing Goode v. Shoukfeh,
943 S.W.2d 441, 446 (Tex. 1997)). A trial court abuses its discretion if its decision
“is arbitrary, unreasonable, and without reference to guiding principles. Id. 
          Resolution of a Batson challenge is a three-step process: (1) the party
challenging the strike must establish a prima facie case of racial discrimination; (2)
if the party challenging the strike does so, the striking party must come forward with
a race-neutral explanation; and (3) if the striking party does so, the party challenging
the strike must prove purposeful racial discrimination. Miller-El v. Dretke, 545 U.S.
231, 239, 125 S. Ct. 2317, 2324 (2005); Baker, 981 S.W.2d at 755 (citing Purkett v.
Elem, 514 U.S. 765, 767–68, 115 S. Ct. 1769, 1770–71 (1995)). Jack complains only
that the trial court failed to complete the third step of the process, giving “short-shrift” to his Batson challenges. 
          Appellees exercised two of their peremptory strikes on venireperson 10,
Burrell, and venireperson 31, Babineaux. Jack raised a Batson complaint, contending
that both Burrell and Babineaux were struck from the jury because they were African
American. The trial court conducted a Batson hearing, at which appellees explained
that Burrell was struck because he was “fiddling with his cell phone” and “laughing
regularly” during voir dire, indicating that he would not give the case the attention
that it deserved. The court agreed:
I find credible the attorney’s remarks concerning the way [Burrell] approached
the voir dire process. I saw him making remarks throughout the voir dire
process to other jurors notwithstanding that he wasn’t being talked to. I saw
him fiddling with his cell phone and/or Palm Pilot.

          Appellees explained that they used a peremptory strike on Babineaux because
she was a busy doctor who indicated a desire to avoid serving on the jury. Babineaux
had stated that she was about to start a long-awaited vacation and could not give the
case her full attention. Appellees further explained that physicians are generally
preoccupied and do not make good jurors. The trial court recalled that Babineaux
“wanted off this jury, said it in so many words.” The court overruled Jack’s Batson
challenges, finding that both jurors had been struck for race-neutral reasons. See
Brumfield v. Exxon Corp., 63 S.W.3d 912, 916 (Tex. App.—Houston [14th Dist.]
2002, pet. denied) (“[T]he trial court may believe or not believe the explanation
offered by the party who exercised the peremptory challenge. Whether the race-neutral explanation should be believed is purely a question for the trial court.”).
          Jack was given the opportunity to show purposeful discrimination as to each
of the contested peremptory strikes. After appellees stated their race-neutral reasons
for striking Burrell, Jack asked, “Do I get to show pretext on that?” The trial court
responded, “I just finished saying that I saw him fiddling with his cell phone, too; and
I saw him laughing as well. But you may go ahead and say they didn’t see what I
saw. Go ahead.” Jack asked more questions about what appellees had “heard” from
Burrell that led them to use a peremptory strike on him and concluded with, “That’s
all.” Similarly, after appellees had stated their reasons for striking Babineaux, the
trial court stated, “I do remember our discussion with her. She wanted off this jury,
said it in so many words. I am concerned that if she is selected, that she will indeed
do a disservice, through no fault of her own, to the parties in this dispute.” Jack
responded with several questions directed at appellees and, when asked if there was
anything further, responded, “That’s all from me, Your Honor.” Based on this record,
we conclude that Jack has failed to show in what way the court gave “short-shrift” to
his Batson challenges. 
          We overrule issue two.Partial Summary Judgment
          In his last issue, Jack complains that the court erred by granting, in part,
appellees’ motions for summary judgment. Jack contends that “the gravamen of all
of the motions was that the [appellees’] claims were barred under the doctrines of res
judicata and/or collateral estoppel.” The partial summary judgment order does not
specify the grounds on which it was granted. When, as here, a trial court does not
state the reasons for its ruling, the summary judgment can be upheld upon any theory
alleged in the motion. Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170,
173 (Tex. 1995).
          As stated previously, the trial court ordered in its partial summary judgment
that Plaintiff Herbert Jack’s claim for revocation is dismissed as to all
Defendants and that Plaintiff take nothing from such claim.
 
. . . that Plaintiff’s claim for breach of an express warranty as to
Defendant Forest River Inc. is dismissed and that Plaintiff take nothing
from Defendant Forest River Inc. from such claim.
 
. . . that Plaintiff’s claims under the [DTPA] as to the Defendant Bank
of America National Association are hereby dismissed and that Plaintiff
take nothing from Defendant Bank of America National Association
from such claims.

          Each of the motions for summary judgment raised multiple grounds upon
which the trial court could have granted the motions.


 Jack has failed to “attack all
independent bases or grounds that fully support [the] complained-of ruling or
judgment.” Britton v. Tex Dep’t of Crim. Justice, 95 S.W.3d 676, 681 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). “[I]f an independent ground fully supports
the complained-of ruling or judgment, but the appellant assigns no error to that
independent ground, then (1) we must accept the validity of that unchallenged
independent ground . . . and thus (2) any error in the grounds challenged on appeal
is harmless because the unchallenged independent ground fully supports the
complained-of ruling or judgment.” Id. Because Jack failed to attack any grounds
other than “res judicata and/or collateral estoppel,” we must affirm the court’s partial
summary judgment. See id. 
          Furthermore, to the extent that Jack attempts to raise a complaint as to the
competency of the summary-judgment evidence, such argument is inadequately
briefed. Jack fails to provide any citations to the record and fails to identify
specifically any statements that he contends are “unsubstantiated legal and factual
conclusions unsupported by the evidence.”  See Tex. R. App. P. 38.1(h). 
          We overrule issue three.Conclusion
          We affirm the judgment of the trial court. 
          Holiday World’s “Motion to Conclude Appeal Despite Appellant’s Death”
under Texas Rule of Appellate Procedure 7.1(a) is overruled as moot. See Tex. R.
App. P. 7.1(a) (“If a party to a civil case dies after the trial court renders judgment but
before the case has been finally disposed of on appeal, the appeal may be perfected,
and the appellate court will proceed to adjudicate the appeal as if all parties were
alive. The appellate court’s judgment will have the same force and effect as if
rendered when all parties were living. The decedent party’s name may be used on all
papers.”).
 
Tim Taft
Justice

Panel consists of Justices Taft, Keyes, and Alcala.